# GOLDEN, ACTING DISTRICT ATTORNEY OF KINGS COUNTY v. ZWICKLER.

No. 370.   Argued January 16, 1969.—Decided March 4, 1969.

104

*Samuel A. Hirshowitz,* First Assistant Attorney General of New York, argued the cause for appellant. With him on the brief were *Louis J. Lefkowitz,* Attorney General, and *Brenda Soloff,* Assistant Attorney General.

*Emanuel Redfield* argued the cause and filed a brief for appellee.

*Joseph B. Robison* and *Beverly Coleman* filed a brief for the American Jewish Congress, as *amicus curiae,* urging affirmance.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case was here before as *Zwickler* v. *Koota,* 389 U. S. 241 (1967). We there held that the three-judge District Court for the Eastern District of New York erred in abstaining from deciding whether Zwickler, appellee in the instant case, was entitled to a declaratory judgment respecting the constitutionality of New York Penal Law § 781–b, now New York Election Law § 457, and we remanded to the District Court for a determination of that question. Section 781–b made it a crime to distribute anonymous literature in connection with an election campaign.[1] Zwickler had been convicted of violating this provision by distributing

---

[1] Section 781–b, in pertinent part, made it a misdemeanor to "distribute in quantity . . . any handbill · . . . which contains any statement . . . concerning any political party, candidate . . . in connection with any election of public officers, party officials . . . without . . . reproducing thereon . . . the name and post-office address of the . . . person . . . at whose instance . . . such handbill . . . is so . . . distributed . . . ."

anonymous handbills in connection with the 1964 congressional election. That conviction was reversed, on state law grounds, by the New York Supreme Court, Appellate Term. The New York Court of Appeals affirmed in 1965 and filed a memorandum which stated that constitutional questions had not been reached. 16 N. Y. 2d 1069, 213 N. E. 2d 467. A few months thereafter, on April 22, 1966, Zwickler brought this suit.

The complaint sets forth the facts regarding the prosecution and its termination. A Congressman standing for re-election in 1964 was criticized in the anonymous handbill for opposing two amendments to the 1964 Foreign Aid bill.[2] The complaint alleged that the

---

[2] The text of the 1964 handbill is as follows:

"REPRESENTATIVE MULTER—EXPLAIN YOUR POSITIONS
"AID TO NASSER

"On September 2, 1964, an amendment was proposed to a foreign aid bill (Public Law 480). In substance, it would have cut off all aid to the United Arab Republic. Congressman Multer spoke at length against the amendment, and in his own words, urged its defeat 'as earnestly as I can.' He stated that his position was based on 'humanitarian instinct.' (Congressional Record 20792.)

"In this respect, the following should be noted

"(a) Congressman Multer's stand permits the diversion of funds by Dictator Nasser to his armaments buildup.

"(b) The United Arab Republic is also a recipient of aid from Communist Russia.

"(c) Egypt is now employing the technical skills of scientists, formerly under the employ of the Nazis.

"(d) Congressman Multer debated against the amendment on the eve of the summit conference held in Cairo by 13 Arab States which are threatening the peace of the Near East and the State of Israel in particular.

"SOVIET ANTI-SEMITISM

"The 1964 Foreign Aid bill was passed in the United States Senate with an amendment sponsored by Senator Abraham Ribicoff (D., Conn.) that strongly condemned the anti-Semitic practices of the

Congressman "will become a candidate in 1966 for reelection . . . and has been a political figure and public official for many years," and that Zwickler "desires and intends to distribute . . . at the place where he had previously done so and at various places in said [Kings] County, the anonymous leaflet herein described . . . and similar anonymous leaflets . . . at any time during the election campaign of 1966 and in subsequent election campaigns or in connection with any election of party officials, nomination for public office and party position that may occur subsequent to said election campaign of 1966."

It was disclosed on the argument of *Zwickler* v. *Koota* in this Court that the Congressman had left the House of Representatives for a place on the Supreme Court of New York. We deemed this development relevant to the question whether the prerequisites for the issuance of a declaratory judgment were present. We noted, however, that, probably because of the decision to abstain, the parties had not addressed themselves to, and the District Court had not adjudicated, that question. 389 U. S., at 244, n. 3. Therefore, we directed that on the remand "appellant [Zwickler] must establish the elements governing the issuance of a declaratory

---

Soviet Union. When this issue was brought to the House-Senate conferees, a much more general statement decrying all types of religious bigotry was adopted.

"Representative Multer praised this 'watered down' measure on the House floor, and stated:

" 'While the Senate version did point the finger directly at Soviet Russia, the version as finally adopted, I think, is much the better one.

" 'I believe, instead of pointing the finger at the culprit now before the bar of world public opinion where it is being so severely condemned, it is much better that this Congress go on record as it is doing now, against religious persecution wherever it may raise its ugly head.' (Congressional Record 22850.)

"WHY MR. MULTER, WHY? ? ? ? ?"

judgment." *Id.*, at 252, n. 15; see also *id.*, at 252–253, n. 16.

The District Court hearing on the remand was limited largely to the oral argument of counsel, and no testimony was taken concerning the existence of the elements governing the issuance of a declaratory judgment. The three-judge court held that the prerequisites of a declaratory judgment had been established by the facts alleged in the complaint, and that the fact that the Congressman who was the original target of the handbills would not again stand for re-election did not affect the question. The court said:

> "The attempt of defendant to moot the controversy and thus to abort a declaration of constitutional invalidity by citing the circumstance that the Congressman concerning whom the Zwickler handbill was published has since become a New York State Supreme Court Justice must fail. When this action was initiated the controversy was genuine, substantial and immediate, even though the date of the election to which the literature was pertinent had already passed.

> .       .       .       .       .

> ". . . The fortuitous circumstance that the candidate in relation to whose bid for office the anonymous handbill was circulated had, while vindication inched tediously forward, removed himself from the role of target of the 1964 handbill does not moot the plaintiff's further and far broader right to a general adjudication of unconstitutionality his complaint prays for. We see no reason to question Zwickler's assertion that the challenged statute currently impinges upon his freedom of speech by deterring him from again distributing anonymous handbills. His own interest as well as that of others who would with like anonymity practise free speech in a

political environment persuade us to the justice of his plea." 290 F. Supp. 244, 248, 249 (1968).

We noted probable jurisdiction *sub nom. Koota* v. *Zwickler,* 393 U. S. 818 (1968). We reverse.

The District Court erred in holding that Zwickler was entitled to declaratory relief if the elements essential to that relief existed "[w]hen this action was initiated." The proper inquiry was whether a "controversy" requisite to relief under the Declaratory Judgment Act existed at the time of the hearing on the remand.[3] We now undertake that inquiry.

"[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, 'concrete legal issues, presented in actual cases, not abstractions,' are requisite. This is as true of declaratory judgments as any other field." *United Public Workers of America* v. *Mitchell,* 330 U. S. 75, 89 (1947). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.,* 312 U. S. 270, 273 (1941).

---

[3] The Declaratory Judgment Act, 28 U. S. C. § 2201, expressly provides: *"In a case of actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (Emphasis added.)

We think that under all the circumstances of the case the fact that it was most unlikely that the Congressman would again be a candidate for Congress precluded a finding that there was "sufficient immediacy and reality" here.[4] The allegations of the complaint focus upon the then forthcoming 1966 election when, it was alleged, the Congressman would again stand for re-election. The anonymous handbills which the complaint identified as to be distributed in the 1966 and subsequent elections were the 1964 handbill and "similar anonymous leaflets." On the record therefore the only supportable conclusion was that Zwickler's sole concern was literature relating to the Congressman and his record.[5] Since the New York statute's prohibition of anonymous handbills applies only to handbills directly pertaining to election campaigns, and the prospect was neither real nor immediate of a campaign involving the Congressman, it was wholly conjectural that another occasion might arise when Zwickler might be prosecuted for distributing the handbills referred to in the complaint. His assertion in his brief that the former Congressman can be "a candidate for Congress again" is hardly a substitute for evidence that this is a prospect of "immediacy and reality." Thus the record is in sharp contrast to that in *Evers* v. *Dwyer*, 358 U. S. 202 (1958), relied upon by the District Court.

It was not enough to say, as did the District Court, that nevertheless Zwickler has a "further and far broader right to a general adjudication of unconstitutionality . . . [in] [h]is own interest as well as that of others

---

[4] The former Congressman's term of office as a State Supreme Court Justice is 14 years.

[5] The allegation of the complaint that Zwickler might distribute anonymous handbills relating to "party officials" does not indicate otherwise. The Congressman held an elective party position as a district leader. See 290 F. Supp., at 248.

who would with like anonymity practise free speech in a political environment . . . ." The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance. In *United Public Workers of America* v. *Mitchell, supra,* at 89–90, we said:

> "The power of courts, and ultimately of this Court, to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough."

The same is true of the power to pass upon the constitutionality of state statutes. No federal court, whether this Court or a district court, has "jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, *except as it is called upon to adjudge the legal rights of litigants in actual controversies." Liverpool, N. Y. & P. S. S. Co.* v. *Commissioners,* 113 U. S. 33, 39 (1885). (Emphasis added.) See also *United States* v. *Raines,* 362 U. S. 17, 21 (1960). The express limitation of the Declaratory Judgment Act to cases "of actual controversy" is explicit recognition of this principle.

We conclude that Zwickler did not establish the existence at the time of the hearing on the remand of the elements governing the issuance of a declaratory judgment, and therefore that the District Court should have dismissed his complaint. We accordingly intimate no view upon the correctness of the District Court's holding as to the constitutionality of the New York statute. The judgment of the District Court is reversed, and the case is remanded with direction to enter a new judgment dismissing the complaint.

*It is so ordered.*