John A. DONALD et al., Plaintiffs,

v.

The UNIVERSITY OF MISSISSIPPI et al., Defendants.

No. WC 70-13.

United States District Court,
N. D. Mississippi, W. D.

Jan. 30, 1973.

John C. Brittain, Jr., Melvyn R. Leventhal, of Anderson, Banks, Nichols & Leventhal, Jackson, Miss., Louis Myers, Oxford, Miss., for plaintiffs.

Ed Davis Noble, Jr., William A. Allain, Office of Attorney General, State of Mississippi, Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

On the evening of February 25, 1970, the Student Body Association of the University of Mississippi sponsored a campus concert by an assemblage of troubadors called "Up With People". While the concert was in progress, a group of black students, believing the occasion presented an appropriate opportunity to dramatize grievances, entered the auditorium without tickets and joined the performers on stage while they saluted the audience with clenched fists, a semaphore of political activism.

With perhaps overabundant zeal, university officials summoned the Mississippi Highway Patrol to augment the campus security detachment. Although the number of students who participated in the demonstration is unclear, approximately 85 black students were arrested, and many were transported to the Mississippi State Penitentiary for confinement until released on bond.

The students were charged with violating state criminal statutes as well as university regulations; including the obstruction or disruption of university ac-

tivities, and the unauthorized use of university facilities. Although the criminal charges were never prosecuted, the students were directed to appear before The Student Judicial Council, an adjudicative body also composed of students, to answer the university charges.

The judicial council conducted hearings, and on March 17, 1970 recommended that eight students be suspended for a period of one year. Charges against the remainder were either dropped, or discipline suspended. The recommendations were approved on the same day, and thus given binding effect under university procedure, by the Dean of the Division of Student Personnel. An appeal was subsequently denied by the chancellor. Moreover, an attorney for the eight students was unsuccessful in an attempt to stay the effective date of suspension pending an appeal to the Board of Trustees for the Institutions of Higher Learning.

A class action was filed in this court on behalf of the eight students facing immediate suspension alleging, inter alia, substantive and procedural due process and first amendment violations, and seeking to enjoin the action of the judicial council.

After trying the action on a motion for a preliminary injunction, this court enjoined the pending suspension until and unless the Board of Trustees entertained the students' appeal in a de novo proceeding which fully complied with minimal due process standards.

After a two-day hearing, the Board affirmed the suspensions until January 30, 1971. Having determined that the Board complied with the provisions of the injunction, this court subsequently entered an order sustaining the action. However, the defendants were directed to award all credits earned in the interim to seven of the students, and a diploma to one student. From this order, an appeal and a cross-appeal were perfected. Both, however, were voluntarily dismissed at a later date.

Before the de novo hearing was conducted and before an answer was filed, the plaintiffs filed an amended complaint which contains three counts. The first count essentially restates the allegations and prayer for relief embodied in the original complaint. By the second and third counts, however, the plaintiffs propose to significantly expand the scope of this action.

Plaintiffs allege that the fundamental course pursued by the Board of Trustees is racially motivated, that the state maintains a dual, segregated system of higher education, and that the facilities and opportunities available to students and potential students at predominately black institutions are grossly inferior. They seek, inter alia, the appointment of a receiver to administer the affairs of the Board of Trustees, and disestablishment of the alleged dual system of higher education. Plaintiffs contend that the latter course can be accomplished by an equalization of expenditures, facilities, and resources, pupil and teacher assignments, interschool athletic competition, elimination of residual forms of segregation, and the adoption of a "geographic or functional" administrative plan.

The class proposed in the first count would comprise all students arrested, disciplined or threatened with discipline as a result of the incident of February 25, 1970. The class proposed in the second and third counts would essentially encompass all students and potential students injured by an alleged dual, segregated system of higher education; i. e., students and potential students at predominately black colleges or universities operated by the state.

In due course, the defendants answered the complaint, and filed a motion to dismiss for jurisdictional deficiencies including the failure to state a claim upon which relief can be granted. A limited amount of discovery was commenced.

In order to insure the just disposition of this action, the court propounded

three questions to the parties in an order entered on August 29, 1970:

(a) whether plaintiffs have the right to inject into the case the additional issues set forth in the amended complaint . . .

(b) if plaintiffs have this right, whether a three-judge court should be constituted . . .

(c) whether this action should proceed as a class action with respect to the issues presented by counts two and three of the amended complaint, and if so, the proper members of the class?

A briefing schedule was also announced in the order. However, upon plaintiff' motion, the court entered a subsequent order on October 29, 1970 holding the action in abeyance for 90 days. The 90 days stretched into a period of almost two years. During that time no further action was initiated by any party. On August 22, 1972, the court entered an order directing the parties to respond to the questions posed, or suffer dismissal for failure to prosecute.

The briefs have been received, and oral argument presented. The action is now before the court upon the questions posed, and the defendants' motion to dismiss. The issues to be resolved touch upon the judicial power of this court.

■■■ The "case" and "controversy" mandate is, of course, a fundamental requirement which restricts the judicial power to questions presented in an adversary context. U.S.Const. Art. III, § 2; Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). An action which has been mooted by intervening developments lacks the character of a present, live controversy between adverse parties with competing interests, economic or otherwise. Flast v. Cohen, *supra*; cf. Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971). Moreover, because this court is powerless to render advisory opinions on hypothetical questions, a moot issue does not lend itself to judicial resolution. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956,

22 L.Ed.2d 113 (1968). Without elaboration, plaintiffs have candidly conceded that certain aspects of this litigation are moot.

■■ The issue of the authority of the university, observing proper safeguards, to discipline these students has previously been adjudicated, and no further relief is available from this forum. The question, therefore, lacks continuing viability as to the named representatives of the class. E. g., Indiana Employment Security Division et al. v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973). Mootness, however, is but one aspect of justiciability; standing is another.

■■ The concept of standing to litigate requires that a party allege "such a personal stake in the outcome of the controversy as [would] assure that concrete adverseness which sharpens the presentation of issues. . . . " Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The principal question can be succinctly verbalized: is the plaintiff a proper party to seek an adjudication of a particular issue? Flast v. Cohen, *supra*. If the plaintiff cannot satisfactorily allege that the challenged action has caused him injury in fact, or exposed him to the reasonable likelihood of potential injury, he lacks the necessary standing to sue. Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

■ The exact current status of the named plaintiffs is uncertain. Suffice it to say, however, that none are now enrolled as students at the University of Mississippi. Consequently, declaratory relief with respect to First Amendment allegations would be improper. Golden v. Zwickler, *supra*. Furthermore, since it was neither alleged nor shown that the named plaintiffs are or were students or potential students at predominately black colleges and universities operated by the state, they lack standing to raise and litigate the allegations of counts

two and three of the amended complaint. Neither are the named plaintiffs actual members of the class they purport to represent in those counts.

 This court has previously approached the "members of a class" requirement on a flexible, rule-of-reason basis. Rule 23, F.R.Civ.P.; Carr v. Conoco Plastics, Inc., 295 F.Supp. 1281 (N.D.Miss.1969). Applying the same standard today the court finds that the plaintiffs have demonstrated no substantial relationship to the class they seek to represent in the amended complaint.

In summary, the court finds that the allegations of count one of the amended complaint present only moot questions; that the plaintiffs lack standing to raise and litigate the allegations of counts two and three, and that they are not satisfactory parties to represent the purported class. An appropriate order will be entered finally dismissing the complaint.