Mark A. SMITH, et al., Plaintiffs,

v.

Ronald REAGAN, President of the United States, et al., Defendants.

No. 85–119–CIV–3.

United States District Court, E.D. North Carolina, Fayetteville Division.

June 23, 1987.

Mark L. Waple, Hutchens & Waple, P.A., Fayetteville, N.C., for plaintiffs.

Sam T. Currin, U.S. Atty., Raleigh, N.C., and David J. Anderson and Virginia Strasser, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This action was brought pursuant to the Hostage Act of 1868, 22 U.S.C. § 1732 (the Hostage Act), and the Fifth Amendment to the United States Constitution. The original plaintiffs were active and reserve personnel of the United States Armed Forces. The case has been dismissed as to those plaintiffs. Subsequent plaintiffs are members of the immediate families of certain United States servicemen who were declared missing in action in Southeast Asia during the 1960's and 1970's. The plaintiffs also allege a class of persons who are deemed by the United States Government to be missing in action in Southeast Asia.

Initially, the plaintiffs petitioned this court for two kinds of relief. First, the plaintiffs sought a writ of mandamus ordering the President to pursue official inquiries as to the existence and current status of those missing in action. Second, the plaintiffs requested the court to declare that American servicemen alleged to be missing in Southeast Asia "enjoy the full

**694**

protection and benefit of the United States Constitution and the Hostage Act, 22 U.S.C. § 1732." The defendants moved to dismiss the complaint on the following grounds: (1) that the subject matter of the complaint raises a nonjusticiable political question; (2) that the Hostage Act creates no private right of action; (3) that the duties imposed on the President by the Hostage Act, if any, entail the exercise of discretion and are therefore an inappropriate subject for mandamus; (4) and that prudential reasons counsel against the granting of declaratory relief.

In a previous order, this court dismissed the mandamus count holding that the conduct of foreign affairs is textually committed by the United States Constitution to the President and therefore the court lacks subject matter jurisdiction under 22 U.S.C. § 1732 to issue a writ of mandamus. With respect to the plaintiffs' request for declaratory relief, however, the court found that it possessed subject matter jurisdiction to determine issues of fact and to enter a declaratory judgment. Thus, the court denied the motion to dismiss as it applied to the declaratory judgment action. *Smith v. Reagan*, 637 F.Supp. 964 (E.D.N.C., 1986).

The defendants have now moved that the court reconsider its assertion of jurisdiction over the declaratory judgment action. In the alternative, the defendants move the court to certify the order denying the motion to dismiss the declaratory judgment claim to the Court of Appeals for interlocutory appeal. The court has reviewed all of the briefs, oral argument and factual material submitted by the parties on this motion and concludes that there is subject matter jurisdiction in this court to determine the issues of fact that may exist between these parties involving the existence of American servicemen declared missing in action in Southeast Asia and to afford declaratory judgment, if appropriate, on factual issues that may arise.

## I.

The defendants in their motion to reconsider argue that the claim for declaratory judgment presents a nonjusticiable political question; that there is no private right of action under the Hostage Act; and that prudential reasons require the court to deny relief within its discretion pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

In their complaint, the plaintiffs request that declaratory judgment be entered "to the effect that members of the plaintiffs' class enjoy the full protection and benefit of the Fifth Amendment of the United States Constitution and the Hostage Act, 22 U.S.C. § 1732." At the heart of the declaratory judgment action is the question of whether living American servicemen, who were declared missing in action or prisoners of war in Southeast Asia during the 1960's and 1970's, continue to be held captive by unfriendly governments and political sovereignties in Southeast Asia, including Vietnam, Laos and Cambodia. The plaintiffs allege that such a class exists and therefore falls within the scope of the Hostage Act. This allegation, if joined as a contested issue by the pleadings, presents a question of fact for decision by the court.

The defendants argue that the political question doctrine bars a federal court from asserting jurisdiction to inquire into the Executive Departments' administration of foreign affairs. This interpretation of the doctrine would deny to parties like these plaintiffs any judicial forum to test the truth of the facts asserted by the executive in administering United States law. The defendants, in effect, would become the sole judges of the facts involved in executing the law merely because the contested facts involved a question of foreign affairs.[1] This claim of power is in excess

---

1. The courts most properly invoke the political question doctrine in situations where the political process provides effective redress for the plaintiffs' grievance. The political process to which the public has recourse in the paradigm political question case has failed to afford relief to the plaintiffs here. Indeed, this is precisely the core of the plaintiffs' claim: that despite over a decade of hearings and investigation of this issue by Congress and despite numerous petitions to the President and executive departments, there has been a deliberate strategy on the part of the Executive Branch, the defense agencies and the government intelligence agen-

of the constitutional authority vested in the executive branch. The authority to resolve questions of fact raised in the context of a lawsuit arising under the Constitution or laws of the United States is vested in the judicial branch of our government. While the separation of powers doctrine calls for the exercise of judicial restraint when the issues involve the resolution of questions committed by the text of the Constitution to a coordinate branch of government, the doctrine cannot justify the courts' avoiding their constitutional responsibility in the exercise of their appropriate power. *Powell v. McCormack*, 395 U.S. 486, 549, 89 S.Ct. 1944, 1978, 23 L.Ed.2d 491 (1969). *See also United States v. Brown*, 381 U.S. 437, 462, 85 S.Ct. 1707, 1722, 14 L.Ed.2d 484 (1965); *Youngstown Sheet & Tube Company v. Sawyer*, 343 U.S. 579, 613–14, 72 S.Ct. 863, 898–99, 96 L.Ed. 1153 (1952) (Frankfurter, J., concurring).

> Notwithstanding the deference each branch must accord the others, the "judicial Power of the United States" vested in the federal courts by Article III, § 1 of the Constitution can no more be shared with the Executive Branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress shall share with the Judiciary the power to override a Presidential veto. Any other conclusion would be contrary to the basic concept of the separation of powers and the checks and balances that flow from the scheme of a tripartite government. The Federalist, No. 47, p. 313 (S. Mittell ed., 1938). We therefore reaffirm that it is the province and duty of this Court "to say what the law is" with respect to the claim of privilege presented in this case. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

*United States v. Nixon*, 418 U.S. 683, 704–05, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974).

The court is mindful of its limitations in dealing with issues that touch upon the core powers of the executive branch. The President is "exclusively responsible for

cies to conceal what plaintiffs allege to be the

the *conduct* of foreign affairs." *Johnson v. Eisentrager*, 339 U.S. 763, 789, 70 S.Ct. 936, 949, 94 L.Ed. 1255 (1950) (emphasis added). It is clear, however, that in designing our Government by dividing and allocating the sovereign power among three separate, but equal, branches "the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence." *United States v. Nixon*, 418 U.S. at 707, 94 S.Ct. at 3107. "While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Company v. Sawyer*, 343 U.S. at 635, 72 S.Ct. at 870 (Jackson, J., concurring).

To read the Article II powers of the executive branch as vesting the exclusive authority to determine the facts that it will use in administering the government and executing the laws of the United States as it applies to the alleged class of persons in this case "would upset the constitutional balance of 'a workable government' and gravely impair the role of the courts under Article III." *United States v. Nixon*, 418 U.S. at 707, 94 S.Ct. at 3107.

The court also notes that the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a district court may "declare the rights ... of any interested party ... whether or not further relief is or could be sought." The availability of declaratory relief depends on whether there is a live dispute between the parties, *Powell v. McCormack*, 395 U.S. at 518, 89 S.Ct. at 1962, and a request for declaratory relief may be considered independently of whether other forms of relief are appropriate. *Id. See also Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell*, 330 U.S. 75, 93, 67 S.Ct. 556, 566, 91 L.Ed. 754 (1947). Because there is a live dispute between the parties in the case at bar, this court finds that in terms of the general

true facts.

criteria of justiciability, this case is justiciable.

The defendants' contention that the plaintiffs do not have a private right of action under the Hostage Act is also without merit. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the United States Supreme Court held that when "it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling." *Id.* at 82, 95 S.Ct. at 2090 (emphasis by the Court). The Hostage Act, at issue in this case, reads in pertinent part:

> Whenever it is made known to the President that any citizen of the United States has been unjustly deprived of his liberty by or under the authority of any foreign government, it shall be the duty of the President forthwith to demand of that government the reasons of such imprisonment, ... demand the release of such citizen, and if the release so demanded is unreasonably delayed, the President shall use such means, not amounting to acts of war, as he may think necessary and proper to obtain or effectuate the release....

It is apparent from the reading of this Act that it creates a class of citizens, i.e., American citizens held captive by foreign governments, and that this class has certain rights under the Act. The Act mandates that it *shall* be the duty of the President and that the President *shall* use such means to obtain or effectuate the release of the hostages. Further, the plaintiffs are the appropriate representatives of the class. There is nothing in the Act or in its legislative history to suggest an "explicit purpose to deny such a cause of action." Moreover, in *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981), the Supreme Court, in considering the Hostage Act, stated that "the enactment of legislation closely related to the question of the President's authority in a particular case which evinces legislative intent to accord the President broad discre-

tion may be considered to 'invite' 'measures on independent presidential responsibility.'" *Id.* at 678, 101 S.Ct. at 2986, citing *Youngstown Sheet & Tube Company v. Sawyer*, 343 U.S. at 637, 72 S.Ct. at 871. The United States Court of Appeals for the Seventh Circuit recently held that "the language and the legislative history of the Hostage Act convince us that Congress placed a *judicially enforceable duty* on the Executive to inquire into the circumstances of an American citizen's extended detention abroad." *Flynn v. Shultz*, 748 F.2d 1186, 1195 (7th Cir.1984) (emphasis added). *See also Redpath v. Kissinger*, 415 F.Supp. 566 (W.D. Texas, 1976). Accordingly, the court finds that there is an implied cause of action under the Hostage Act.

As this court stated in its previous order, it is premature at this stage of the declaratory judgment action to determine if an issue of fact will exist for declaratory judgment. The factual issues, if any, have yet to be joined by the pleadings. As such, the court will continue to reserve the exercise of its discretion to determine whether the declaratory judgment action should be dismissed for providential reasons.

## II.

The defendants also move in the alternative that this court's order be certified for immediate appeal to the United States Court of Appeals for the Fourth Circuit. Title 28 of the United States Code, Section 1292(b) provides that when a district judge finds that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and that "an immediate appeal may materially advance the termination of the litigation," such order should be certified to the Court of Appeals for interlocutory review.

The court has carefully reviewed the defendants' motion to certify and finds that it is meritorious. The political question doctrine is founded upon the constitutional principle of separation of powers and has been recognized and applied since its conception in *Marbury v. Madison*, 5 U.S. (1

Cranch) 137, 165–66, 2 L.Ed. 60 (1803). Certification of this dispositive question may materially advance the ultimate termination of this lawsuit in that it will address the question of the court's jurisdiction, and the legal sufficiency of the complaint. The defendants' position that the evidence necessary to decide the factual issue of whether there are live prisoners of war would, at least in part, involve classified intelligence and military information presents an even more compelling reason for certification of this court's previous order.

### III.

Upon the foregoing, the court hereby ORDERS that the defendants' motion for reconsideration is DENIED. It is FURTHER ORDERED that the defendants' alternate motion for certification of this court's previous order denying the defendants' motion to dismiss the declaratory judgment claim for interlocutory appeal is ALLOWED.