Matthew LEE, Plaintiff,

v.

**Ruth Ann MINNER, in her official capacity as Governor of the State of Delaware, and M. Jane Brady, in her official capacity as Attorney General of the State of Delaware, Defendants.**

**No. CIV.A. 03–1063–JJF.**

United States District Court, D. Delaware.

May 13, 2005.

---

Walter Speed Rowland, Wilmington, DE, Institute for Public Representation, Georgetown University Law Center, Washington, DC (Richard McKewen, David C. Vladeck, of counsel), for Plaintiff.

W. Michael Tupman, Deputy Attorney General, of the Delaware Department of Justice, Dover, DE, for State Defendants.

## OPINION

FARNAN, District Judge.

Presently before the Court is a Renewed Motion For Summary Judgment (D.I.33) filed by Plaintiff and a Motion for Summary Judgment (D.I.38) filed by Defendants. For the reasons discussed, Plaintiff's Renewed Motion For Summary Judgment will be granted to the extent that he seeks a declaratory judgment that the "citizens only" provision of Delaware's FOIA is unconstitutional under the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution, and Defendants' Motion For Summary Judgment on the constitutionality of the "citizens only" provision will be denied. In addition, Defendants' Motion will be granted to the extent that it seeks dismissal of the Governor as a defendant.

## BACKGROUND

### I. Procedural Background

On November 24, 2003, Plaintiff, Matthew Lee, filed a Complaint (D.I.1) pursuant to 42 U.S.C. § 1983 for declaratory judgment and injunctive relief against Ruth Ann Minner, in her official capacity as Governor of the State of Delaware, and M. Jane Brady, in her official capacity as Attorney General of the State of Delaware. By his Complaint, Plaintiff alleges that the Freedom of Information Act of the State

of Delaware ("FOIA") violates the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.

Defendants filed an Answer to the Complaint on December 10, 2003, and Plaintiff moved for summary judgment shortly thereafter. (D.I.12.) A pretrial conference was held, and the Court granted Defendants' request for discovery. The Court subsequently denied Plaintiff's Motion For Summary Judgment, with leave to renew following discovery. (D.I.25.) After discovery was completed, Plaintiff filed the instant Renewed Motion For Summary Judgment (D.I.33), and Defendants also filed a Motion For Summary Judgment. After briefing was completed, the Court held oral argument on the parties' motions.

## II. Factual Background

Plaintiff is a citizen of the State of New York and the founder of Inner City Press, a non-profit community and consumers' organization incorporated in the State of New York and headquartered in the South Bronx. (Lee Decl. ¶¶ 2,3; Lee Dep. at 6, 9–11.) Plaintiff currently serves as the Executive Director of Inner City Press, which has two paid employees, one of which is Plaintiff, and a network of up to 100 volunteers. (Lee Dep. at 10, 26–27.) Inner City Press uses the public commentary process to persuade banks and financial institutions to commit resources to lend to low-income communities through community reinvestment agreements. (Lee Dep. 23–24, 37, 43–44, 77–79.) Inner City Press posts a number of newsletters on its website, including one dedicated to regulatory developments in Delaware. (D.I.39, Ex. 2, 3.) Along with the volunteers at Inner City Press, Plaintiff submits public comments to the Federal Reserve Board, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency and the Office of Thrift Supervision concerning the compliance of financial institutions with the Community Reinvestment Act. (Lee Dep. at 23–24.) Plaintiff and ICP also monitor regulatory developments in states, including Delaware. In this regard, Plaintiff submits comments to and attends hearings held by the Delaware Department of Insurance and Department of Banking. (Lee Dep. at 37, 43–44.)

In addition to his work with Inner City Press, Plaintiff is also an author, commentator and lawyer. (Lee Decl. ¶¶ 5–10; Lee Dep. at 6–7, 13–14, 29–34, 45–46, 68–69.) Plaintiff earned his law degree in 1996 from Fordham University and is admitted to practice in the State of New York and in the District of Columbia. (Lee Dep. at 6–8.) Plaintiff spends about twenty-five percent of his time practicing law, and he and ICP have filed several public interest lawsuits against regulators challenging bank mergers under the Community Reinvestment Act. (Lee Dep. at 21–23.) As an author and commentator, Plaintiff also focuses on the business practices of banks and financial service companies, particularly on the alleged predatory and discriminatory lending practices of these entities and their efforts to acquire and be acquired by other entities. (Lee Decl. ¶ 4; Lee Dep. 36–37, 42, 54–56.) Plaintiff's writings have been published in several outlets, including websites and print media. (Lee Dep. 14, 30–34, 84.)

Plaintiff also serves as one of 25 directors of the National Community Reinvestment Coalition, a non-profit trade association based in Washington, D.C. (Lee Dep. at 17, 48.) NCRC advocates for increased access to credit products and services in low-income and minority communities. *National Community Reinvestment Coalition v. National Credit Union Ad-*

*ministration,* 290 F.Supp.2d 124, 129 (D.D.C.2003). NCRC achieves its goals by informing the public about whether financial institutions are complying with their obligation to provide credit products and services to the entire community. *Id.* As a director of NCRC, Plaintiff attends four meetings each year in Washington, D.C. (Lee Dep. at 17.) Plaintiff also serves on the Regulatory Committee of NCRC, which monitors the impact of federal legislation and bank regulatory proceedings on the Community Reinvestment Act. (Lee Dep. at 17–18). According to Plaintiff, he spends about ten percent of his time on NCRC activities. (Lee Dep. at 49.)

Plaintiff also serves as special counsel to the Delaware Community Reinvestment Action Council, a non-profit organization that uses state grants to provide financial literacy education in Delaware. (Lee Dep. at 40.) Plaintiff assists the Council to file public comments with banking regulators. (Lee Dep. at 40–41.)

Financially, Plaintiff earns his salary through ICP which is funded by several grants and fellowships obtained by Plaintiff. (Lee Dep. at 75–76.) Plaintiff also earns money as an author for his freelance writing. (Lee Dep. at 14, 45, 68.) In connection with his journalistic work and his services to ICP, NCRC, and the Council, Plaintiff travels to Delaware. (Lee Dep. at 16.) Plaintiff observes and participates in state regulatory proceedings in Delaware and speaks at the Council's annual conference in Wilmington, Delaware. (Lee Dep. at 40.) Overall, Plaintiff estimates that he spends approximately twenty to twenty-five percent of his time working on state and federal regulatory issues. (Lee Dep. at 66–67.)

As part of his work, Plaintiff has made multiple FOIA requests in Delaware, including requests directed to the Attorney General's Office, the Banking Department, and the Insurance Department. (Answer ¶¶ 10, 13; Lee Decl. ¶ 14.) For example, on January 12, 2003, Plaintiff made an e-mail request on behalf of Inner City Press to the Attorney General pursuant to the FOIA for records related to the settlement negotiated by the Attorney General with Household International, Inc. (along with its affiliates, "Household"), and for actions by the Attorney General against Household's continued predatory lending and insurance in connection therewith. (D.I. 30 at Ex. 4.) By letter dated January 22, 2003, Delaware State Solicitor Malcom S. Cobin denied Plaintiff's request stating, "Pursuant to 29 Del. C. § 10003 'All public records shall be open to inspection and copying by any citizen of the State during regular business hours....' Your address indicated that you are not a citizen and therefore would not be permitted to inspect and copy public records under FOIA." (*Id.*) Mr. Cobin also denied Plaintiff's FOIA request on the alternative ground that the files sought were exempt from disclosure under the FOIA as "investigative files, attorney client privileged, and attorney client work product." (*Id.*)

By letter dated September 3, 2003, Plaintiff made another FOIA request on behalf of Inner City Press for records related to the recently re-announced settlement with Household by the Attorney General. (*Id.*) Plaintiff also requested records "related to [the] Office's consideration of and action on alleged conflicts of interest with regard to representing state agencies in connection with applications for regulatory approval by HSBC [Household's parent] and/or Household." (*Id.*)

By letter dated September 29, 2003, the State Solicitor denied Plaintiff's requests for the same reasons indicated in the letter dated January 22, 2003. In addition, Mr. Cobin advised Plaintiff that any documents pertaining to a conflict of interest in a

matter would constitute attorney work product and would not be a public record under the FOIA. (*Id.*) Based on these letters denying Plaintiff's FOIA requests on citizenship grounds, Plaintiff filed the instant lawsuit challenging the constitutionality of the "citizens only" provision of Delaware's FOIA.

## STANDARD OF REVIEW

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 200 (3d Cir.1995).

In this case, the Court finds that no genuine issues of material fact are in dispute, and the only issues remaining are questions of law. Accordingly, the instant dispute is appropriately submitted for resolution on summary judgment.

## DISCUSSION

### I. Whether The "Citizens Only" Provision Of Delaware's FOIA Violates The Privileges And Immunities Clause Of Article IV, Section 2 Of The United States Constitution

 The Privileges and Immunities Clause of Article IV, section 2 of the United States Constitution provides: "The Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in Several States." The Privileges and Immunities Clause is designed to prevent the discriminatory treatment of citizens [1] from other states. As the United States Supreme Court has explained, the purpose·of the Privileges and Immunities clause is

> to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other states; it gives them the right of free ingress into other States and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision of the Constitution has tended so strongly to constitute the citizens of the United States one people as this.

*Hicklin v. Orbeck*, 437 U.S. 518, 526, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (quoting *Paul v. Virginia*, 8 Wall. 168, 75 U.S. 168, 180, 19 L.Ed. 357 (1868)).

To determine if a discriminatory act violates the Privileges and Immunities Clause, the Supreme Court has fashioned a three-prong test. *See Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); *United Bldg. & Constr. Trades Council· of Camden County and Vicinity v. Mayor and Council of the City of Camden*, 465 U.S. 208, 218, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). First, the court must determine whether the statute "burdens one of those privileges and immunities protected by the clause." *United*

---

1. In discussing the Privileges and Immunities Clause, the terms "citizen" and "resident" may be used interchangeably. *Supreme Court*

*of New Hampshire v. Piper*, 470 U.S. 274, 279, n. 6, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985).

*Bldg.*, 465 U.S. at 218, 104 S.Ct. 1020. Second, the court must determine whether there is a substantial reason for the discriminatory approach of the challenged statute beyond the mere fact that the targeted group is comprised of citizens of other states. *Toomer*, 334 U.S. at 396, 68 S.Ct. 1156. Third, the defendants must demonstrate that "the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985).

### A. Whether Delaware's FOIA Burdens One Of The Protected Privileges Or Immunities

By his Motion For Summary Judgment, Plaintiff contends that the "citizens only" provision of Delaware's FOIA impacts two fundamental concerns protected by the Privileges and Immunities Clause. Specifically, Plaintiff contends that the FOIA precludes him from practicing his "common calling" on substantially equal footing with the citizens of Delaware and prevents him from participating in governing processes that affect both residents and nonresidents. In support of his argument, Plaintiff points out that many national and international corporations and financial institutions that he reports on are incorporated in Delaware, and the accompanying regulation of these institutions by the State of Delaware has impact beyond the State's borders. As an investigative journalist, Plaintiff contends that Delaware's FOIA prevents full, fair and robust reporting on Delaware's regulatory activities by restricting access to necessary source materials to Delaware citizens only. Plaintiff also contends that Delaware's FOIA curtails his ability to participate in the governing process on matters of national economic and political importance.

In response, Defendants contend that the cases involving the Privileges and Im-

munities Clause fit into three discrete categories: (1) professional licensing, (2) preference for residents in hiring and contracting, and (3) onerous taxes or excises on doing business in a state. Defendants contend that Plaintiff does not fit into any of these categories, and therefore, he cannot establish that the FOIA precludes him from engaging in his common calling of journalism. Defendants contend that Plaintiff's ability to earn a living is not impacted by the FOIA, and that limiting access to public records does not constitute impermissible "economic discrimination" under the Privileges and Immunities Clause.

To determine whether the FOIA burdens one of the privileges and immunities protected by the Privileges and Immunities Clause, the Court must first determine whether the "concern" asserted is sufficiently "fundamental to the promotion of interstate harmony" and "bear[s] upon the vitality of the Nation as a single entity." *United Bldg.*, 465 U.S. at 218, 104 S.Ct. 1020. "[T]he pursuit of the common calling is one of the most fundamental of those privileges protected by the Clause." *Id.* at 219, 104 S.Ct. 1020. In this regard, "the Clause guarantees to citizens of State A [the privilege] of doing business in State B on terms of substantial equality with the citizens of the State." *Piper*, 470 U.S. at 280, 105 S.Ct. 1272.

■ Reviewing the parties' arguments in light of the applicable legal principles, the Court is persuaded that Plaintiff has demonstrated that the FOIA impacts his fundamental privilege to pursue a common calling on equal footing with Delaware citizens. Plaintiff cannot practice his common calling as a journalist and consumer activist on the same terms and conditions as journalists and consumer advocates who are citizens of the State of Delaware. Plaintiff is precluded from accessing materials openly available to Delaware citizens based solely on his status as a noncitizen

of Delaware. Plaintiff cannot obtain these otherwise publicly available records without associating himself with a Delaware law firm or citizen, and thus, incurring additional expenses.

Defendants contend that the Privileges and Immunities Clause applies only to "economic discrimination" that would impact the nation's ability to "function as a single economic union," and that Plaintiff in this case is not affected economically by the FOIA's restrictions. The Court is not persuaded that the Privileges and Immunities Clause should be interpreted so as to apply only to economic discrimination. While it is true that the bulk of the case law concerning the Privileges and Immunities Clause concerns economic matters, the Supreme Court has expressly noted that it "has *never* held that the Privileges and Immunities Clause protects only economic interests." *Piper*, 470 U.S. at 281 n. 11, 105 S.Ct. 1272 (1985) (emphasis added). Rather, the Privileges and Immunities Clause is triggered by "discrimination against out of state residents on matters of fundamental concern." *United Bldg.*, 465 U.S. at 220, 104 S.Ct. 1020. While such matters certainly include economic concerns, they extend beyond those concerns to include all those fundamental matters that "bear[ ] on the vitality of the Nation as a single entity" and are " 'fundamental' to the promotion of interstate harmony." *Id.*

In addition to its impact on Plaintiff's ability to practice his common calling on equal footing with citizens of the State of Delaware, the Court also concludes that the FOIA's citizenship requirement impacts Plaintiff's ability to engage in the political process with regard to matters of both national political and economic importance. As the Supreme Court has recognized in construing the federal Freedom of Information Act, "the basic purpose of the FOIA is to ensure an informed citizenry,

vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). In fact, the Delaware FOIA states that "[i]t is vital in a democratic society that public business be performed in an open and public manner ..." 29 Del. C. § 1001. In the Court's view, this statement recognizes that access to public records is the hallmark of effective participation in a democracy. As the "corporate home" for thousands of corporations in the United States, Delaware's regulations have nation-wide political and economic impact, and therefore, it seems reasonable that noncitizens should have the same access to public records as Delaware citizens. *See Blake v. McClung*, 172 U.S. 239, 256, 19 S.Ct. 165, 43 L.Ed. 432 (1898) ("[A] state cannot forbid citizens of other states from suing in its courts, that right being enjoyed by its own people.").

In sum, because Plaintiff is prohibited from accessing public records that have impact on noncitizens, as well as citizens of the State of Delaware, and is precluded from practicing his profession in the same manner as citizens of the State of Delaware based solely on his status as a citizen of the State of New York, the Court concludes that Plaintiff has demonstrated that the FOIA impacts fundamental concerns and privileges protected by the Privileges and Immunities Clause.

B. *Whether There Is A Substantial Reason For The Discrimination Under The FOIA And Whether The Discrimination Against NonCitizens Bears A Substantial Relationship To The State's Objective*

■ Because the FOIA facially discriminates against noncitizens with regard to the fundamental privilege to pursue a common calling on equal footing with Delaware citizens and to participate in politi-

cal processes having a nation-wide impact, the Court must next determine whether Defendants have advanced a substantial reason for the statute's discriminatory approach beyond the mere fact that the targeted group is comprised of citizens of other states. *Toomer*, 334 U.S. at 396, 68 S.Ct. 1156. To prove a substantial reason, the Defendants have the burden of proving that there is an independent, valid reason for the discriminatory treatment of nonresidents, and that nonresidents are a "peculiar source of the evil at which the statute is aimed." *Toomer*, 334 U.S. at 399, 68 S.Ct. 1156, *Hicklin v. Orbeck*, 437 U.S. 518, 525–26, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

In their brief, Defendants argue that the purpose of the FOIA is "to define the political community and strengthen the bond between citizens and their government officials," and this supports the statute's distinction between citizens of Delaware and noncitizens. (D.I. 39 at 17.) Defendants contend that the discriminatory approach of the FOIA is necessary, because the vitality of the State's political processes depends upon the active participation of the citizens of the State. Defendants go on to tie the provisions of the FOIA to the right to vote pointing out that "[s]uffrage 'always has been understood to be tied to an individual's identification with a particular state." ' (D.I. 44 at 11) (quoting *Baldwin*, 436 U.S. at 383, 98 S.Ct. 1852).

■ While it is generally accepted that a State has an interest in limiting voting rights to its residents and to define its political community, Defendants have not demonstrated how allowing noncitizens access to the same public information available to the State's citizens impedes or thwarts those interests. Defendants cite

to the Supreme Court's decisions in *Sugarman v. Dougall*, 413 U.S. 634, 93 S.Ct. 2842 (1973) and *Bernal v. Fainter*, 467 U.S. 216, 104 S.Ct. 2312, 81 L.Ed.2d 175 (1984), in support of their argument that the State has a right to defend its political contours from encroachment by nonresidents; however, the outcome of both of those cases diminishes Defendants' argument that nonresidents' access to public information poses a threat to the State's identity.[2] In *Sugarman*, the Supreme Court concluded that a State could not exclude foreign nationals from employment in State civil service jobs, and in *Bernal*, the Supreme Court concluded that a State could not prohibit foreign nationals from becoming notaries-public. So, if the State's identity is not compromised by employing foreign nationals or permitting them to authenticate documents and witnesses as notaries public, it is difficult to understand how the State's identity would be compromised by allowing a noncitizen to access information that is already publicly available to citizens of Delaware.

In considering Defendants' claim, the Court believes the circumstances of this case are analogous to the circumstances in *Toomer*. In *Toomer*, the Supreme Court refused to uphold South Carolina's commercial shrimping statute, in part because the record did not demonstrate how the fishing techniques of nonresidents harmed South Carolina more than the techniques of South Carolina's fishermen. *Toomer*, 334 U.S. at 398, 68 S.Ct. 1156. In this case, the Court is not persuaded that Defendants have demonstrated how nonresidents' access to public documents and information harms the State any more than access by residents. If, as Defendants contend, one of the goals of the FOIA is to strengthen the bond between citizens and

2. Although *Sugarman* referenced the Privileges and Immunities Clause in its analysis, both *Sugarman* and *Bernal* were cases brought under the Equal Protection Clause of the Fourteenth Amendment.

their government by ensuring transparency and accountability in government, then nonresidents are no more a threat to this goal than residents. Indeed, consumer advocates and journalists like Plaintiff are particularly suited to advancing the goals of transparency and accountability, whether they are Delaware citizens or not, and it is difficult to understand how such external scrutiny might undermine the bond between citizens and their government.

Finally, the Court concludes that Defendants have not demonstrated that the FOIA's exclusion of noncitizens bears a substantial relationship to the State's objectives. As the State Solicitor stated during his testimony and the Deputy Attorney General confirmed during oral argument, the State does not look beyond the mailing address of the person making the request to determine whether that request is ultimately made by a Delaware citizen. (D.I. 36, Cobin Dep. at 11:16–24.) For instance, Defendants concede that noncitizens can readily obtain documents and information by a FOIA request through the use of a "citizen by proxy."[3] Because noncitizens can and apparently do access documents and information through Delaware citizens, the Court concludes that the State cannot justify its announced objectives of defining and limiting its political contours.

## II. Whether The Governor Of The State Of Delaware Is Properly Named As A Defendant In This Lawsuit

██ By their motion, Defendants contend that the Governor is not a proper party defendant for two reasons. First, Defendants contend that there is no case or controversy between Plaintiff and the Governor, because the FOIA charges the Attorney General with the duty of enforcing the law. Second, Defendants contend that the Eleventh Amendment bars Plaintiff's suit against the Governor, because she has no special relationship to the enforcement of Delaware's FOIA.

In response, Plaintiff contends that there is a "realistic potential" that the Governor will use her general power to enforce the laws of the State to deny him access to information under the FOIA. Thus, under the principles set forth in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), Plaintiff contends that the Governor is properly named as a defendant in this action. In support of his argument, Plaintiff points out that he has made numerous attempts to obtain records from not only the Attorney General's office, but also from other Delaware agencies like the Banking Department and the Insurance Department. Because it would be impractical to sue every head of every Department and because the Governor appoints and exercises supervisory authority over the individuals in these positions, Plaintiff contends that a clear connection exists between the Governor and the enforcement of the FOIA such that the Governor is properly named as a defendant in this action.

### A. *Whether A Case Or Controversy Exists Between Plaintiff And Governor Minner*

██ Under Article III of the Constitution, a federal court may exercise juris-

---

**3.** With regard to the use of "citizen by proxy," Defendants explained at oral argument:

DEPUTY ATTORNEY GENERAL: Citizen by proxy. Yes. I have seen on any number of occasions, some have even been addressed to me, from Richards, Layton & Finger or Young Conaway or whatnot [Delaware law firms], signed by a partner of the firm who I know lives in North Wilmington, asking for records. And I sort of think, he is probably doing this not just for himself, because he has got a client somewhere. The request is, as far as I know, honored.

Tr. 11/5/04 at 21.

diction only where there is an actual case or controversy to be decided. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). In the Third Circuit, a plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement only if the official has either enforced, or threatened to enforce, the statute against the plaintiff. *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir.1993); *Rode v. Dellarciprete*, 845 F.2d 1195, 1209 n. 9 (3d Cir.1988). Absent prior enforcement or threat of enforcement of the challenged law, a government official's general authority to enforce the laws of the state is not sufficient to subject that government official to suit in an action challenging the law. *Rode*, 845 F.2d at 1208. In this case, the FOIA does not charge the Governor with any enforcement duties. Rather, the Attorney General is vested with the duty to investigate citizens complaints under the FOIA and sue to enforce the provisions of the FOIA. In addition, Plaintiff has not presented any evidence that the Governor has enforced or has threatened to enforce the FOIA against Plaintiff. Accordingly, the Court concludes that the Governor's general duty to enforce the laws of the State of Delaware is insufficient to create a case or controversy between Plaintiff and the Governor, and therefore, the Court will grant Defendant's Motion For Summary Judgment to the extent that it seeks dismissal of the Governor as a defendant in this action.

### B. *Whether The Eleventh Amendment Bars Plaintiff's Suit Against The Governor*

In the alternative, the Court concludes that Plaintiff's suit against the Governor is barred by the Eleventh Amendment. "The Eleventh Amendment prohibits the commencement or prosecu-

tion of any suit against one of the United States by citizens of another state or citizens or subjects of any foreign state." *Ex parte Young*, 209 U.S. at 149, 28 S.Ct. 441. Under the principles set forth in *Ex Parte Young*, an officer of the State may be named as a party defendant in a suit for prospective injunctive relief to prevent a continuing violation of federal law, if "it is plain that such officer ... ha[s] some connection with the enforcement of the act ...." *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441. Without this "special relationship," the Supreme Court recognized that "the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the State was, in a general sense, charged with the execution of all of its laws, and the latter, as attorney general might represent the State in litigation involving enforcement of its statutes." *Id.* In *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988), the Third Circuit acknowledged that joinder of an officer with general obligations to uphold the law may be appropriate in certain circumstances under *Young*; however, the Third Circuit also recognized that it is appropriate to limit such joinder to those cases in which there is a "'real, not ephemeral, likelihood or realistic potential that the connection will be employed against the plaintiff's interests.'" *Id.* at 1208 (quoting *Allied Artists Pictures Corp. v. Rhodes*, 473 F.Supp. 560, 568 (S.D.Ohio 1979)). Although the Governor has the general duty to enforce the laws of the State of Delaware, Plaintiff has not shown that there is a realistic potential that the Governor will use that general authority to enforce the FOIA's "citizens only" provision against him. In addition, the FOIA does not bestow any particular enforcement responsibilities on the Governor, and Plaintiff is able to challenge the

constitutionality of the FOIA by naming as a defendant the Attorney General, i.e. the individual statutorily vested with the FOIA's enforcement.

The Court is also not persuaded that the Governor has a special relationship to the enforcement of the FOIA by virtue of her power to appoint various department heads. The Attorney General and the Insurance Commissioner, both of which are referenced in Plaintiff's brief, are elected state officials holding independent constitutional status. Del. Const. Art. III, § 21. As a result, the Governor has no controlling authority over the disclosure of records by these individuals. As for the Banking Commissioner, it is true that this commissioner is appointed by the Governor; however, Plaintiff has not shown that the Governor has had any personal involvement in the decisions by that Commissioner to deny Plaintiff access to records under the FOIA. *Cf. Rode*, 845 F.2d at 1208 ("holding in civil rights action that supervisory authority is insufficient to establish liability, because liability cannot be predicated solely on the operation of respondeat superior"). Because the Governor lacks any special relationship to the FOIA, Plaintiff's suit against the Governor is essentially a suit against the State of Delaware which is prohibited by the Eleventh Amendment. Accordingly, the Court concludes in the alternative that Plaintiff's suit against the Governor is precluded by the Eleventh Amendment.

### CONCLUSION

For the reasons discussed, the Court concludes that the "citizens only" restriction of Delaware's FOIA is unconstitutional under the Privileges and Immunities Clause, and therefore, the Court will grant Plaintiff's Renewed Motion For Summary Judgment. The Court will deny Defendants' Motion For Summary Judgment with respect to the constitutionality of the FOIA's "citizens only" provision, but grant the Motion to the extent that it seeks dismissal of the Governor as a defendant.

### *ORDER*

At Wilmington, this 13 day of May 2005, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The Renewed Motion For Summary Judgment (D.I.33) filed by Plaintiff is *GRANTED* to the extent that he seeks a declaratory judgment that the "citizens only" provision of Delaware's FOIA is unconstitutional under the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.

2. The Motion for Summary Judgment (D.I.38) filed by Defendants is *DENIED* on the question of the constitutionality of the "citizens only" provision of Delaware's Freedom of Information Act, and *GRANTED* to the extent that it seeks dismissal of the Governor as a party to this lawsuit.

3. Plaintiff shall submit to the Court a proposed final judgment order and a proposed injunction order consistent with the foregoing Opinion, with notice of said proposed orders to Defendants. Defendants shall file any objections to the proposed orders **within five (5) days of receipt of the proposed orders.**