**SUMMIT MEDICAL ASSOCIATES, P.C., et al., Plaintiffs,**

v.

**Fob JAMES, Jr., et al., Defendants.**

**No. CIV. A. 97–T–1149–N.**

United States District Court, M.D. Alabama, Northern Division.

March 19, 1998.

J. Richard Cohen, Rhonda Brownstein, Southern Poverty Law Center, Montgomery, AL, Kathryn Kolbert, Julie Kay, Simon Heller, The Center for Reproductive Law & Policy, New York, NY, David A. Gespass, Kathleen M. Johnson, Johnson & Gespass, Birmingham, AL, for plaintiffs.

Algert S. Agricola, Jr., Wallace, Jordan, Ratliff & Brandt, L.L.C., Jere L. Beasley, Thomas J. Methvin, P. Leigh O'Dell, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, Charles B. Campbell, Albert L. Jordan, Kimberly R. West, Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, AL,

William P. Gray, Jr., Gray & Jauregui, Montgomery, AL, for defendants.

## ORDER

MYRON H. THOMPSON, Chief Judge.

This lawsuit, in which the plaintiffs, Alabama-based providers of abortion services, challenge the constitutionality of two recently-enacted Alabama abortion statutes under the fourteenth amendment to the United States Constitution, is presently before the court on a motion to stay proceedings pending appeal, filed by defendants Bill Pryor, the Attorney General of the State of Alabama, and Ellen Brooks, the Montgomery District Attorney, (collectively, the "attorney general defendants"). The attorney general defendants seek a stay of all proceedings before this court, pending resolution of their appeal of this court's order, entered January 26, 1998, denying the attorney general defendants' motion to dismiss on the ground of eleventh amendment immunity. *See Summit Medical Assocs. v. James,* 984 F.Supp. 1404 (M.D.Ala.1998). For the reasons that follow, the court will grant the attorney general defendants' motion and stay all proceedings in this cause pending appeal.

## I. BACKGROUND

The facts of this lawsuit, as alleged by the plaintiffs, are set out in the court's memorandum opinion entered January 26, 1998. In brief, the plaintiffs' challenges are leveled against two Alabama abortion statutes. The first is the Alabama Partial–Birth Abortion Ban Act of 1997, 1975 Ala.Code §§ 26–23–1 to 26–23–6 (Law.Co-op.Supp.1997), which took effect on August 1, 1997, and proscribes what it terms "partial-birth abortions," except under certain medical emergency circumstances. The second statute, the Alabama Abortion of Viable Unborn Child Act, 1975 Ala.Code §§ 26–22–1 to 26–22–4 (Law. Co-op.Supp.1997), took effect on August 12, 1997, and proscribes abortions performed after the fetus has achieved "viability." The plaintiffs seek declaratory and injunctive relief and have named as defendants the Governor of the State of Alabama, the Attorney General of the State of Alabama, and the Montgomery District Attorney, in her official

capacity and as a representative of the class of district attorneys for the State of Alabama.

On September 4, 1997, the governor and the attorney general defendants filed separate motions to dismiss the lawsuit. The only issue raised in these motions relevant to the present motion to stay proceedings is the attorney general defendants' argument that the lawsuit must be dismissed in its entirety because the plaintiffs' claims are barred by the eleventh amendment to the United Stated Constitution, which immunizes all of the named defendants from suit. In its memorandum opinion and order dated January 26, 1998, the court rejected this argument and held that it may exercise jurisdiction over the plaintiffs' claims because they fall within the longstanding exception to eleventh amendment immunity, first articulated by the United States Supreme Court in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), for actions seeking declaratory and injunctive relief against state officials for alleged violations of federal law. *See Summit Medical Assocs.,* 984 F.Supp. at 1420–25. For purposes of the present motion, a brief discussion of the grounds for this holding is warranted.

In essence, the attorney general defendants proffered two primary arguments in support of their motion to dismiss on eleventh amendment grounds. First, they contended that although the plaintiffs seek purely prospective relief against the defendants, and so this lawsuit arguably falls within the purview of the *Ex parte Young* doctrine, the specific relief sought is sufficiently intrusive and connected to the state itself that the 'fiction' worked by that doctrine is inapplicable here. Their second primary argument was grounded on the *Ex parte Young* doctrine's requirement that the challenged conduct of the state officials be 'ongoing' or 'continuing,' and not merely 'threatened,' for the exception to apply. The attorney general defendants maintained that the plaintiffs face, at most, a speculative threat of prosecution under the statutes, and that consequently their claims do not qualify for the *Ex parte Young* exception.

The court rejected both of these arguments, and held instead that this lawsuit conforms to the prototypical one in which the *Ex parte Young* exception applies, where state officials are sued in their official capacities for prospective relief calculated to prohibit them from enforcing an allegedly unconstitutional state law. *Summit Medical Assocs.,* 984 F.Supp. at 1422. Furthermore, the court concluded that the plaintiffs had alleged the requisite 'ongoing or continuing violation' of their constitutional rights, by contending that they face a continuing threat of prosecution and civil liability under the two challenged abortion statutes, in view of the governor and attorney general's indication that they intend to prosecute violations of the two statutes. *Id.* at 1423. In reaching its decision, the court emphasized that as a consequence of the ongoing threat of prosecution the plaintiffs cannot freely exercise their asserted constitutional rights without fear of arrest, prosecution, or being haled into court pursuant to the acts' civil provisions. Finally, the court also remarked that to the extent that the attorney general defendants take the position that the plaintiffs must await a state criminal prosecution to secure their desired relief, their argument flies in the face of one of the central rationales underlying the *Ex parte Young* decision, namely that the plaintiffs should not be compelled to await a state court criminal prosecution, with its attendant risk of heavy sanctions, to vindicate their constitutional rights. *Id.* at 1424–25.

On February 13, 1998, the attorney general defendants filed a timely notice of appeal from this court's denial of their motion to dismiss on the grounds of eleventh amendment immunity. On that same date, they filed the motion to stay proceedings that is presently before the court. The court held a telephone conference concerning this motion on March 5, 1998.

## II. DISCUSSION

### A.

As both parties recognize, a court of appeals may exercise jurisdiction over an interlocutory appeal by a defendant from a denial of a motion to dismiss grounded on a claim of eleventh amendment immunity. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113

S.Ct. 684, 121 L.Ed.2d 605 (1993). Among the reasons underlying this principle is the notion that "the value to the States of their Eleventh Amendment immunity ... is for the most part lost as litigation proceeds past motion practice." *Id.* at 145, 113 S.Ct. at 688. Thus, providing state and state-official defendants with swift access to appellate review of denials of eleventh-amendment-immunity claims acknowledges that the principal benefits of eleventh amendment immunity to suit—namely "avoiding the costs and general consequences of subjecting public officials to the risks of discovery and trial"—perish irretrievably when a case is erroneously permitted to proceed to trial. *Id.* at 143–44, 113 S.Ct. at 687.

These same considerations also favor granting a stay of the trial court proceedings pending resolution of such an interlocutory appeal, as the Seventh Circuit—the only court of appeals to have addressed this question—recently held in *Goshtasby v. Board of Trustees of Univ. of Ill.*, 123 F.3d 427 (7th Cir.1997). In *Goshtasby,* the Seventh Circuit extended to the eleventh-amendment-immunity context the reasoning underlying its prior decision in *Apostol v. Gallion,* 870 F.2d 1335 (7th Cir.1989), which held that a stay of proceedings in the district court is required where a public official takes an interlocutory appeal to assert a non-frivolous claim to absolute or qualified immunity. As the *Goshtasby* court explained,

> "Our reason [for requiring a stay in *Apostol* ] was not any formal division of 'jurisdiction' between trial and appellate courts—for an appeal from an interlocutory order may endow both courts with authority over discrete portions of the case—but the fact that immunity gives a public official a 'right not to be sued' as well as a right to win on the merits.... [I]f the defendant is correct that it has immunity, its right to be free of litigation is compromised, and lost to a degree, if the district court proceeds while the appeal is pending. *Just so with an appeal by a state under the eleventh amendment."*

123 F.3d at 428 (emphasis added).

■ Although, for the foregoing reasons, a stay of trial court proceedings is appropriate pending a colorable appeal taken by a state official on eleventh-amendment-immu-

nity grounds, when the appeal is plainly frivolous, as where the claim of immunity is a sham and asserted solely for the purpose of delay, the trial court need not halt the proceedings. As the *Apostol* court recognized, "Courts are not helpless in the face of manipulation. District judges lose power to proceed with trial because the defendants' entitlement to block trial is the focus of the appeal. If the claim of immunity is a sham, however, the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks." 870 F.2d at 1339. *See also Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir. 1992) (holding that the district court may certify as frivolous interlocutory appeals on immunity grounds, and proceed to trial); *accord Yates v. City of Cleveland,* 941 F.2d 444, 448–49 (6th Cir.1991); *Stewart v. Donges,* 915 F.2d 572, 576–78 (10th Cir.1990).

Although the Eleventh Circuit Court of Appeals has not yet addressed the present question of whether a stay should be granted pending a non-frivolous appeal on eleventh-amendment-immunity grounds, the court perceives no reason why that court would not adopt the rationale underlying the Seventh Circuit's *Goshtasby* decision and hold that a stay is warranted under these circumstances. As the attorney general defendants point out, the Eleventh Circuit has noted that eleventh amendment immunity is "a threshold issue" which should be resolved at an early stage of the proceedings, and that the eleventh amendment "is a recognition that the states retain certain attributes of sovereignty, and one of its purposes is to protect states from the indignity of being haled into federal court by private litigants." *In re Bouchard Transp. Co.,* 91 F.3d 1445, 1448 (11th Cir. 1996) (citing *Puerto Rico Aqueduct,* 506 U.S. at 143–44, 113 S.Ct. at 687). The Eleventh Circuit in *Bouchard* reversed the district court's decision to order a state agency to participate in mediation without first addressing the agency's claim of eleventh amendment immunity from suit. 91 F.3d at 1449. Because the considerations underlying *Bouchard* also favor the granting of a stay pending an interlocutory appeal based on eleventh amendment immunity, as previously explained, it is reasonable to conclude that

the Eleventh Circuit, if confronted by the present issue, would require that a stay be granted absent a finding that the appeal is frivolous.

For the foregoing reasons, this court concludes that unless it finds that the attorney general defendants' appeal is wholly frivolous and brought solely for purposes of delay, a stay of all proceedings in this court pending resolution of the appeal is appropriate.

## B.

[3] The parties do not contest the applicability of the foregoing authorities to the present issue. Instead, their dispute arises over whether the attorney general defendants' appeal is frivolous and brought solely for purposes of delay. The plaintiffs contend that because this lawsuit falls squarely within the exception to sovereign immunity carved out by *Ex parte Young,* as this court held in its January 13, 1998, memorandum opinion, there is no non-frivolous basis upon which the attorney general defendants may assert on appeal that the plaintiffs' suit is barred by the eleventh amendment. The attorney general defendants counter by reiterating their argument, which was previously rejected by this court, that the plaintiffs have failed to satisfy *Ex parte Young 's* 'ongoing or continuing violation' requirement, because no individual is or has ever been the target of an imminent prosecution under the two challenged abortion acts.

The court holds that the attorney general defendants' appeal is not frivolous. However, because the eleventh amendment issue presented by this lawsuit appears to have engendered some confusion, as evidenced by the attorney general defendants' arguments proffered in support of their stay motion, the court offers a few additional words on the question of the applicability of the *Ex parte Young* doctrine to this suit.

■ As a threshold matter, the court emphasizes once again its holding that this lawsuit falls squarely within the *Ex parte Young* exception to eleventh amendment immunity. As the court explained in its January 26, 1998, memorandum opinion, the plaintiffs here seek purely prospective relief against state officials in their official capacities, and the requested relief is calculated to prohibit

the officials from enforcing allegedly unconstitutional state enactments. *Summit Medical Assocs.,* 984 F.Supp. at 1422. Thus, this lawsuit conforms to the prototypical case contemplated by *Ex parte Young* and its progeny, in terms of the nature of the relief sought. *Id.* In no way do the plaintiffs seek retrospective relief in any form, nor do they attempt to wrest control of a vital state resource permanently away from Alabama, thus impermissibly offending the state's sovereignty, as the Supreme Court found to be the case in *Idaho v. Coeur d'Alene Tribe,* —— U.S. ——, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). *Summit Medical Assocs.,* 984 F.Supp. at 1421–22.

The principal source of confusion in this case stems not from the foregoing considerations, but rather from the attorney general defendants' attempt to establish that the plaintiffs have failed to satisfy what the parties and court have been referring to as *Ex parte Young 's* 'ongoing or continuing violation' requirement. Accordingly, the court will focus its discussion here on this particular facet of the eleventh amendment issue.

■ Unquestionably, the Supreme Court has emphasized that only 'ongoing' or 'continuing' alleged violations of federal law by a state official trigger the application of the *Ex parte Young* exception. *See, e.g., Coeur d'Alene,* —— U.S. at ——, 117 S.Ct. at 2043 ("Where a plaintiff seeks prospective relief to end a state officer's *ongoing* violation of federal law, such a claim can ordinarily proceed in federal court.") (emphasis added); *Papasan v. Allain,* 478 U.S. 265, 277–78, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986) (noting that *Ex parte Young* "has been focused on cases in which a violation of federal law by a state official is *ongoing* as opposed to cases in which federal law has been violated at one time or over a period of time in the past") (emphasis added); *Green v. Mansour,* 474 U.S. 64, 67–68, 106 S.Ct. 423, 425–426, 88 L.Ed.2d 371 (1985) ("[T]he availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a *continuing* violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.") (emphasis added). However, in asserting that the plaintiffs

here cannot allege the requisite 'ongoing or continuing' federal law violation because no non-conjectural threat of prosecution or civil liability presently exists, the attorney general defendants misconstrue how these terms are employed by the Supreme Court in the eleventh-amendment-immunity context. Specifically, as the court noted in its previous memorandum opinion, *see Summit Medical Assocs.*, 984 F.Supp. at 1422–24, and as it explains in more detail below, the attorney general defendants impermissibly seek to inject into the eleventh amendment analysis considerations that are applicable only to the separate questions of whether the plaintiffs have satisfied the Article III case-or-controversy requirement and whether the court, under principles of equity jurisprudence, should exercise jurisdiction over the plaintiffs' claims for declaratory and injunctive relief.

To fully appreciate how the attorney general defendants have misconstrued the 'ongoing and continuing violation' requirement, one must understand the relationship between this requirement, the concerns of federalism and comity that underlie the *Ex parte Young* doctrine, and the distinct justiciability and equity considerations that circumscribe federal courts' ability to exercise jurisdiction over plaintiffs' claims for relief against the allegedly unconstitutional enforcement of state enactments. A useful scheme for analyzing this relationship emerges when one focuses on the type of federal-law violation that is alleged in a particular lawsuit, because, as will be shown, different considerations apply depending on the nature of the alleged violation.

For purposes of the present analysis, alleged violations of federal law by state officials may be described as falling within one or more of three separate categories, specifically 'past/completed,' 'ongoing or continuing,' and 'speculative/conjectural.' The relationship between these three categories of alleged federal-law violations may be depicted in schematic form as follows:

```
PAST/COMPLETED ONGOING OR CONTINUING SPECULATIVE/CONJECTURAL
VIOLATIONS VIOLATIONS VIOLATIONS

<--retroactive--><-------------prospective relief--------------->
 relief
```

The first category, 'past/completed,' refers to violations by state officials that have occurred *only* in the past; that is, violations based upon conduct that entirely pre-dates and does not extend beyond the initiation of the plaintiffs' lawsuit. The second category, 'ongoing or continuing,' is employed here as it consistently has been employed by the Supreme Court in the eleventh-amendment-immunity context, namely to refer to violations that do not entirely pre-date the initiation of the lawsuit. In other words, this court, like the Supreme Court, defines 'ongoing or continuing' in direct contradistinction to 'past/completed' violations, the cardinal difference between the two categories being that the former refers to infractions that did not take place wholly in the past. *See Papasan*, 478 U.S. at 277–78, 106 S.Ct. at 2940 ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing *as opposed to cases in which federal law has been violated at one time or over a period of time in the past.*") (emphasis added). The third, and final, category, 'speculative/conjectural,' denotes violations that have not commenced at the time of filing, and for which there is no credible threat of future occurrence, beyond mere speculation or conjecture. Thus, where an alleged violation is taking place at the time that the lawsuit is initiated, or where there is a real and immediate threat that a violation of federal law will occur in the near future, the lawsuit involves an 'ongoing or continuing' violation. By contrast, where the plaintiffs cannot establish a credible threat of future violation, so that the court finds the putative threat to be merely hypothetical or imaginary, the suit

alleges a 'speculative/conjectural' violation of federal law.

In addition to these three categories of alleged federal law violations, two vertical lines are depicted in the schematic diagram. One line separates 'past/completed' from 'ongoing or continuing' violations, while the second line separates the latter from 'speculative/conjectural' violations. As will be shown, while the issues associated with each of these lines are implicated by the present lawsuit, the appeal on eleventh-amendment-immunity grounds raises only the issues pertaining to the first line of the schematic diagram. Moreover, any confusion in this suit regarding whether the plaintiffs have satisfied the 'ongoing or continuing violation' requirement may be traced to the attorney general defendants' conflation of the distinct issues associated with the diagram's two lines.

### i. The First Vertical Line: Eleventh Amendment Sovereign Immunity Considerations

The determination of where a lawsuit falls in relation to the first line on the court's schematic diagram, which separates 'past/completed' from 'ongoing or continuing' violations, governs whether the *Ex parte Young* exception to eleventh amendment immunity permits plaintiffs to bring the lawsuit against state officials in federal court. As stated, the Supreme Court has made it clear that only lawsuits in which 'ongoing or continuing' violations of federal law are alleged, as opposed to those alleging violations that occurred solely in the past, do not run afoul of the comity and federalism concerns that lie at the heart of the eleventh amendment, and therefore do not exceed the permissible boundaries of the *Ex parte Young* exception.

The Supreme Court has, in several decisions, explained why the applicability of the *Ex parte Young* exception turns on whether or not the alleged violations of federal law occurred wholly in the past. The Court's observations in two such decisions, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–06, 104 S.Ct. 900, 909–11, 79 L.Ed.2d 67 (1984) and *Papasan*, 478 U.S. at 277–78, 106 S.Ct. at 2940, are particularly illuminating, and so warrant further examination here.

In *Pennhurst*, the Supreme Court addressed the question of whether a claim that state officials violated state law is one against the state and therefore barred by the eleventh amendment. 465 U.S. at 103, 104 S.Ct. at 909. In the course of deciding this question, the Court addressed in some detail the rationale underlying the *Ex parte Young* doctrine, and made the following observations, which shed some light on the issue presently before this court. The *Pennhurst* Court first remarked that the doctrine, despite its transparently fictional quality, "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Id.* at 105, 104 S.Ct. at 910 (quoting *Ex parte Young*, 209 U.S. at 160, 28 S.Ct. at 454). However, the Court was quick to add that it had recognized that this need "must be accommodated to the constitutional immunity of the States," and therefore that, in prior instances it had "declined to extend the fiction of *Young* to encompass retroactive relief, for to do so would effectively eliminate" that immunity. *Id.*

Thus, the Supreme Court recognized that it had established a fundamental distinction for eleventh-amendment-immunity purposes between prospective and retroactive relief. This distinction, according to the Court, "fulfills the underlying purpose of *Ex parte Young* while at the same time preserving to an important degree the constitutional immunity of the States." *Id.* at 106, 104 S.Ct. at 911. In other words, by permitting application of the *Ex parte Young* exception only where the relief sought against state officials is prospective, rather than where plaintiffs seek compensation for a past violation of federal law, the Court believed that it had achieved the proper balance between competing state and federal interests.

In *Papasan*, the Supreme Court further elaborated on the necessity of achieving such an equilibrium. *Papasan* contains what is perhaps the Court's clearest explanation of the relationship between the 'ongoing or continuing violation' requirement and what this court terms 'past/complete' conduct. Remarking once again upon the proper boundaries for application of the *Ex parte Young*

doctrine, the *Papasan* Court made the following pertinent observations:

"We have ... described certain types of cases that formally meet the *Young* requirements of a state official acting inconsistently with federal law but that stretch that case too far and would upset the balance of federal and state interests that it embodies. *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States. Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation.... Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant."

*Papasan*, 478 U.S. at 277–78, 106 S.Ct. at 2940 (internal quotation marks and citations omitted). Thus, the *Papasan* Court unambiguously explained that the term 'ongoing,' as employed in the eleventh-amendment-immunity context, refers to an alleged violation that did not take place entirely in the past. As the Court explained, permitting a suit for such a violation in federal court would serve to compensate individuals for previously incurred damages, or to deter states from violating federal law by holding out the threat of such liability for future transgressions, neither of which is a sufficient interest to overcome the dictates of the eleventh amendment. *Id.* at 278, 106 S.Ct. at 2940.

Thus, as the Supreme Court's decisions in *Pennhurst* and *Papasan* demonstrate, the principles of state sovereign immunity embodied in the eleventh amendment are offended—and the *Ex parte Young* exception is

stretched beyond the breaking point—when plaintiffs attempt to challenge state officials' acts that have taken place wholly in the past. The reason for this is quite simple: such challenges, by their very nature, implicate retroactive, as opposed to prospective, relief, including monetary damages, and therefore must be barred from federal court if the eleventh amendment "is to be conceived of as having any present force." *Edelman v. Jordan*, 415 U.S. 651, 665, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974). In this sense, the Supreme Court employs the terms 'ongoing' and 'continuing' as a short-hand reference to alleged violations that may be remedied through an award of prospective relief to end current, or prevent future, injury to plaintiffs' federally-protected rights, as opposed to violations that may be remedied only by an award of retroactive relief calculated to compensate plaintiffs for injuries suffered in the past.

Returning to its schematic diagram, the court re-iterates that the foregoing discussion was focused on the first vertical line, which separates 'past/completed' from 'ongoing or continuing' violations. As explained, when the state officials' challenged actions have only taken place in the past, and thus the lawsuit falls on the 'past/complete' side of the line, principles of federalism and comity preclude the application of the *Ex parte Young* exception because the federal interests vindicated, namely the awarding of compensation for past damages and the possible deterrence of future violations of federal strictures, do not justify the injury to state sovereign rights inflicted by the exception. By contrast, a different outcome, favoring application of the exception, arises where the alleged violations fall on the 'ongoing or continuing' side of the first vertical line, because an exercise of federal jurisdiction under such circumstances would carry only prospective force, and therefore would vindicate federal interests while according sufficient deference to the state's sovereign immunity.

Thus, if the court finds that the plaintiffs' lawsuit falls on the 'ongoing or continuing' side of the first line of the schematic diagram, in light of the foregoing considerations, the *Ex parte Young* exception is ap-

plicable, and any subsequent analysis no longer revolves around the eleventh amendment. Instead, at this point the court leaves the domain of the eleventh amendment and moves on to the diagram's second line, to determine whether the alleged violations of federal law are speculative or conjectural. This determination is the focus of the next section of this order.

ii. The Second Vertical Line: Article III and Equity Considerations

The analysis associated with the second line on the court's schematic diagram, which separates the 'ongoing or continuing' and 'speculative/conjectural' categories of alleged violations, involves a very different set of constitutional doctrines from those just discussed in relation to the first vertical line. Specifically, the assessment of where a lawsuit falls with respect to the second line determines whether the plaintiffs have met the Article III standing requirement, as well as whether the court should, under traditional principles of equity, exercise jurisdiction over the plaintiffs' requests for declaratory and injunctive relief.

 As the court explained in its January 26, 1998, memorandum opinion, Article III's standing requirement imposes an additional constitutional barrier, distinct from that erected by the eleventh amendment, to litigants who attempt to bring suit in federal court. *See Summit Medical Assocs.*, 984 F.Supp. at 1423–24, 1425. This requirement is satisfied only if the party alleges that it has suffered an actual or threatened injury as a result of the defendant's actions. *See id.* at 1426. Where, as here, the lawsuit challenges a state criminal enactment, to establish standing the plaintiffs must allege " 'an intention to engage in a course of conduct arguably infected with a constitutional interest, and [that] there exists a credible threat of prosecution thereunder.' " *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979)).

 It is the latter aspect of this requirement, the demonstration of a credible threat of prosecution, that is at issue at the second vertical line of the court's schematic diagram. As the court explained in its previous memorandum opinion, a credible threat

cannot be merely imaginary or speculative, but must be "real and immediate." *See id.* Thus, if the alleged violation falls on the 'speculative/conjectural' side of the second line, a federal court may not exercise jurisdiction over the plaintiffs' claim, under basic principles of standing. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983) (holding that plaintiffs lacked standing because they failed to allege a credible threat of injury, where the recurrence of such injury depended upon two speculative events); *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969) (holding that plaintiff lacked standing because it was "wholly conjectural" that any future prosecutions would be advanced against him under a challenged statute). However, where, as the court found to be the case here, the plaintiffs establish a credible threat of prosecution by alleging that their conduct falls within the proscriptions of the challenged statutes and that the state officials stand ready to enforce the statutes against them, the standing hurdle has been surmounted, and the court may exercise jurisdiction over the plaintiffs' claims.

In addition to the standing issue, the second vertical line on the court's schematic diagram has significance with respect to the separate question of whether the court may exercise its jurisdiction over the plaintiffs' claims for equitable relief. As the Supreme Court has observed, the considerations governing whether the standing requirement has been satisfied "obviously shade into those determining whether the complaint states a sound basis for equitable relief." *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974). Thus, in the present context of a challenge to state criminal statutes, the plaintiffs must demonstrate the existence of a credible threat of prosecution under the statutes not only to establish their standing to sue, but also to qualify for federal injunctive relief. *See Morales v. Trans World Airlines*, 504 U.S. 374, 381–383, 112 S.Ct. 2031, 2035–36, 119 L.Ed.2d 157 (1992).

Unfortunately, the attorney general defendants fail to recognize that the relevance of this determination of whether a credible

threat of enforcement exists is restricted to the standing and equity considerations that arise at the second vertical line of the court's schematic diagram, and does not extend to the eleventh-amendment-immunity issue associated with the first vertical line and raised by their appeal to the Eleventh Circuit. This misapprehension of the governing law is most evident in the attorney general defendants' reliance upon the Supreme Court's decision in *Morales* to support their contention that the plaintiffs have failed to satisfy *Ex parte Young*'s 'continuing or ongoing violation' requirement because they have not demonstrated the existence of a credible threat of prosecution under the challenged abortion statutes. *Morales,* as will be shown, pertains only to the equitable-relief issue, and not at all to the question of whether the eleventh amendment bars certain lawsuits against state officials. Consequently, the attorney general defendants improperly blend two distinct and unrelated concepts when they rely upon *Morales* to establish that the plaintiffs suit does not fall within the *Ex parte Young* exception to eleventh amendment immunity.

In *Morales,* the Court considered the scope of federal injunctive relief available where plaintiffs challenge state regulations that they claim to be pre-empted by federal law. The *Morales* Court vacated the injunction entered below by the district court to the extent that it restrained the operation of challenged state laws with respect to matters that were outside the specific obligations that several state attorneys general had threatened to enforce against the plaintiffs. 504 U.S. at 381–383, 112 S.Ct. at 2035–36. In reaching its decision, the *Morales* Court addressed the propriety of granting federal injunctive relief where state enactments are being challenged, in an extended discussion that the attorney general defendants have quoted at length in their brief in support of their stay motion. The pertinent passage reads, in part, as follows:

"It is a ' "basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." ' *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677–678, 38 L.Ed.2d 674

(1974); *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750–751, 27 L.Ed.2d 669 (1971). In *Ex parte Young,* 209 U.S. 123, 156, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), we held that this doctrine does not prevent federal courts from enjoining state officers 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.' When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses—there is no adequate remedy at law. See *id.,* at 145–147, 163–165, 28 S.Ct., at 447–449, 455–456. . . .

"In suits such as this one, which the plaintiff intends as a 'first strike' to prevent a State from initiating a suit of its own, the prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury. See *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 240–241, 73 S.Ct. 236, 238–239, 97 L.Ed. 291 (1952). *Ex parte Young* thus speaks of enjoining state officers 'who threaten and are about to commence proceedings,' 209 U.S., at 156, 28 S.Ct., at 452 (emphasis added); *see also id.,* at 158, 28 S.Ct., at 453, and we have recognized in a related context that a conjectural injury cannot warrant equitable relief, see *O'Shea, supra,* 414 U.S., at 502, 94 S.Ct., at 679. Any other rule (assuming it would meet Article III case-or-controversy requirements) would require federal courts to determine the constitutionality of state laws in hypothetical situations where it is not even clear the State itself would consider its law applicable. This problem is vividly enough illustrated by the blunderbuss injunction in the present case, which declares pre-empted 'any' state suit involving 'any aspect' of the airlines' rates, routes, and services. As petitioner has threatened to enforce only the obligations described in the guidelines regarding fare advertising, the injunction must be vacated insofar as it restrains the operation of state laws with respect to other matters."

*Morales,* 504 U.S. at 381–383, 112 S.Ct. at 2035–36 (footnote omitted).

As this passage illustrates, the *Morales* Court did not concern itself with whether the eleventh amendment precluded a federal-court challenge to a state enactment. Instead, as even a casual reading of the decision reveals, *Morales* addressed the question of whether, consistent with the "basic doctrine of equity jurisprudence that courts of equity should not act … when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief," the plaintiffs had alleged a sufficient threat of enforcement to establish the requisite irreparable injury and inadequacy of legal remedies so that the federal court properly could grant injunctive relief. 504 U.S. at 380–81, 112 S.Ct. at 2035.[1]

Thus, the relevance of *Morales,* though the Court does extensively quote from *Ex parte Young,*[2] does not extend beyond the equity-based considerations that arise at the second vertical line of this court's schematic diagram. In other words, the decision sheds no light on the eleventh-amendment-immunity issue associated with the first line, and the statements in *Morales* regarding the necessity of an imminent threat of prosecution under the challenged state statutes are pertinent only to the question of whether federal injunctive relief, under basic principles of equity, is available to a plaintiff who sues state officials.

As stated, the attorney general defendants fail to recognize this fundamental limitation

of *Morales* when they rely upon the decision to argue that the present lawsuit does not fall within the *Ex parte Young* exception because the plaintiffs do not allege an 'ongoing or continuing' violation of federal law. In this manner, the attorney general defendants conflate the considerations governing the first vertical line's eleventh amendment considerations and the second vertical line's equity-based considerations.[3]

The attorney general defendant's continued reliance upon another Supreme Court decision, *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), to argue against application of the *Ex parte Young* exception in this lawsuit, is similarly misplaced. Despite the fact that the *Fenner* Court did discuss *Ex parte Young* in reaching its decision that federal courts may enjoin state officials from initiating criminal prosecutions only under extraordinary circumstances, an examination of the opinion establishes that the Court was not concerned at all with the question of whether the eleventh amendment barred such lawsuits. Instead, as was true in *Morales,* the *Fenner* Court addressed only the propriety of granting federal injunctive relief against an imminent state prosecution. Moreover, as this court explained in its January 26, 1998, memorandum opinion, the Supreme Court has come to employ the reasoning underlying *Fenner* to determine whether federal courts should abstain from hearing lawsuits where the exercise of federal jurisdiction could potentially interfere with related state-court

---

1. In fact, this court cited *Morales* in its previous memorandum opinion specifically for the proposition that it must examine whether jurisdiction may be exercised over the plaintiffs' claims for equitable relief based upon the application of traditional equity principles, in an analysis that is separate from that pertaining to the eleventh amendment question that is also raised by this lawsuit. *See Summit Medical Assocs.,* 984 F.Supp. at 1434.

2. It is clear that the *Morales* Court relied upon the quoted portions of *Ex parte Young* to establish not that the state-sovereignty principles embodied in the eleventh amendment preclude suits against state officials in federal court, but rather as support for its conclusion that federal injunctive relief is available against state officials only when those officials actually threaten to enforce allegedly unconstitutional state enactments. *See Morales,* 504 U.S. at 381–83, 112 S.Ct. at 2035–

36. The *Morales* Court was apparently not confronted with, and so did not reach, the former question.

3. Furthermore, regarding the question of whether a sufficient threat of enforcement has been alleged in this case—to which the *Morales* opinion is indeed relevant—the court re-iterates its previous conclusion that the two challenged statutes are viable, and not moribund. *See Summit Medical Assocs.,* 984 F.Supp. at 1427, 1435. During the March 5, 1998, hearing that this court held on the stay motion, the attorney general and governor underscored this fact once again by confirming, in no uncertain terms, that any violations of the acts that come to the attorney general's attention will be subject to prosecution pursuant to the appropriate statute, even while a stay of these proceedings is in effect pending resolution of the appeal to the Eleventh Circuit.

proceedings. *See Summit Medical Assocs.*, 984 F.Supp. at 1433–34 & n. 16. Thus, the Court has never interpreted *Fenner* as providing guidance regarding whether or not the *Ex parte Young* exception should be applied to overcome the eleventh amendment's strictures. In addition, as this court also observed in its previous memorandum opinion, while the expansive language in *Fenner* may superficially appear to govern the present lawsuit, the Supreme Court has explained that *Fenner* is instead applicable " 'in those cases where injunctive relief has been sought to restrain an imminent, but not yet pending, prosecution *for past conduct.*' " *Id.* at 1434 (quoting *Steffel v. Thompson*, 415 U.S. 452, 463 n. 12, 94 S.Ct. 1209, 1218 n. 12, 39 L.Ed.2d 505 (1974) (emphasis in original)).

Thus, as the foregoing discussion indicates, the attorney general defendants' arguments regarding the plaintiffs' alleged failure to show that they face an imminent and credible threat of prosecution under the two challenged abortion statutes are completely irrelevant to the eleventh-amendment-immunity issue that they raise on appeal. Because this court has concluded that the plaintiffs' lawsuit alleges violations of federal law that have not occurred solely in the past, that is, prior to the filing of their complaint, they have satisfied the 'ongoing or continuing violation' requirement imposed by *Ex parte Young*, and the eleventh amendment poses no bar. By contrast, the attorney general defendants' contentions regarding the lack of an imminent prosecution are, of course, directly relevant to the distinct questions of whether the plaintiffs enjoy standing to sue in federal court and whether this court should entertain their claims for equitable relief; however, these questions, while they have been hotly disputed by the parties and were decided by the court in the plaintiffs' favor in the January 26, 1998, memorandum opinion, are not implicated by the attorney general defendants' appeal to the Eleventh Circuit.

### C.

Despite its conclusion that the plaintiffs' claims fall squarely within the *Ex parte Young* exception to eleventh amendment immunity, which is undisturbed by the attorney general defendants' contention that the alleged lack of a credible threat of prosecution under the statutes should bar this lawsuit from federal court, the court does recognize that the attorney general defendants have raised colorable arguments regarding the scope of the exception that have not yet been answered by any appellate court in the wake of the Supreme Court's recent decision in *Coeur d'Alene*. Although, as explained more fully in its memorandum opinion of January 26, 1998, this court disagrees with the attorney general defendants' expansive reading of *Coeur d'Alene*, it cannot conclude that they have so misinterpreted that decision that their arguments are wholly without merit and brought solely as a delay tactic. Nor does the court find frivolous the attorney general defendants' arguments regarding the 'ongoing or continuing violation' requirement under *Ex parte Young* and its progeny. Consequently, the court rejects the plaintiffs' argument that the attorney general defendants' appeal on eleventh amendment grounds is wholly frivolous and brought solely for purposes of delay, and finds instead that the stay motion is due to be granted.[4]

### D.

In granting the attorney general defendants' motion and entering a stay of all proceedings in this case pending appeal, the court makes two additional observations. First, the court notes that the plaintiffs have

---

**4.** The plaintiffs also oppose the attorney general defendants' motion by arguing that no stay should be granted as to their claims against the governor, because he has not asserted an eleventh-amendment-immunity defense and thus has not joined the attorney general defendants' appeal. The court rejects this argument, however. As the attorney general defendants correctly observe, a decision by the Eleventh Circuit that the plaintiffs' claims are barred by the eleventh amendment would immunize all defendants in this lawsuit, including the governor, and therefore all of the foregoing considerations that favor granting a stay in proceedings pending resolution of the appeal apply with equal force to the claims against the governor. Like the attorney general defendants, the governor will have irretrievably lost much of the benefit of his eleventh amendment immunity should this litigation be permitted to proceed beyond its current stage to discovery and trial, only to have the Eleventh Circuit eventually reverse this court's ruling on the immunity issue.

stated that they would suffer no significant harm from a delay in the proceedings before this court pending appeal, provided that the court would lift the stay to entertain any request brought by the plaintiffs for preliminary injunctive relief should any emergency matters arise. The court will indeed entertain any colorable request for such relief during the pendency of the stay, in recognition of the fact that in the abortion context, given the unique circumstances presented by a woman's pregnancy, time frequently is of the essence, because decisions must often be made quickly for purposes of preserving maternal health and physicians cannot await the judicial resolution of difficult legal issues.

Second, the court notes that both the attorney general defendants and the governor have indicated that they would not oppose any request made by the plaintiffs that the Eleventh Circuit conduct an expedited review of the attorney general defendants' appeal. It bears emphasis that such an expedited appeal would of course minimize any potential harm to any party due to a delay in the proceedings before this court.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that the motion to stay proceedings pending appeal, filed by defendants Bill Pryor and Ellen Brooks on February 13, 1998, is granted, and further proceedings in this cause are stayed until the appeal taken by defendants Pryor and Brooks is resolved on the merits. Of course, this stay will not extend to any extraordinary request by the plaintiffs for a temporary restraining order, a preliminary injunction, or similar relief, the thrust of which is, among other things, to maintain the status quo or preserve the court's jurisdiction.