[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} On June 22, 1998, plaintiffs, Carl L. Brown, Inc. ("CBI") and Chad Brown, filed a complaint in the Franklin County Court of Common Pleas against defendants Lincoln National Life Insurance Co., Lincoln Financial Group, LNC Equity Sales Corp., Steinhaus Financial Group, and John Taylor. Plaintiffs in this action, Dorothy Brown and the Estate of Carl Brown, were not parties to the original 1998 action.
 {¶ 2} In August 1998, defendants moved the court to direct the plaintiffs to provide them with a more definite statement of the complaint and to strike a number of the allegations contained therein. Defendants' motion for a more definite statement was granted, and plaintiffs were given until February 23, 1999, to comply. However, instead of complying with the court's order by filing a more definite statement on or before February 23, 1999, plaintiffs waited until that date, and filed a motion for an extension of time in which to comply with the court's order.
 {¶ 3} By April 1, 1999, the plaintiffs still had not complied with the trial court's order directing them to file a more definite statement. In light of the plaintiffs' noncompliance with the court's order, defendants moved to dismiss plaintiffs' complaint. On May 26, 1999, the trial court issued a second order in which it denied the defendants' motion to dismiss; however, it issued a second directive to the plaintiffs ordering them to file a more definite statement no later than June 2, 1999. Plaintiffs ultimately complied with the trial court's order on that date. Thereafter, on August 6, 1999, the defendants moved the trial court to enter judgment on the pleadings. While that motion was pending, plaintiffs voluntarily dismissed their complaint. The plaintiffs' dismissal was filed on October 15, 1999.
 {¶ 4} On October 13, 2000, the original plaintiffs re-filed their complaint, adding Mrs. Dorothy Brown and the Estate of Carl Brown as additional plaintiffs to this action. On October 5, 2001, defendants moved the court for permission to file a motion for summary judgment. Permission was granted by the court on October 17, 2001. On December 31, 2001, plaintiffs filed an opposing motion for summary judgment. After both motions had been fully briefed, on February 4, 2002, the trial court issued a decision in which it granted summary judgment to the defendants and denied summary judgment to the plaintiffs. Plaintiffs appeal that decision raising the following eight assignments of error:[1]
 {¶ 5} "[1.] The trial court erred in sustaining defendant-appellees' motion for summary judgment where there are genuine issues of material fact concerning whether the plaintiff-appellants' claims are barred by a four year statute of limitations when the complaint was filed within four years of plaintiffs-appellants' decedent's death.
 {¶ 6} "[2.] The trial court erred in sustaining defendant-appellees' motion for summary judgment where there are genuine issues of material fact concerning whether the plaintiffs-appellants' claims are justiciable under R.C. 2305.06, which includes a fifteen year statute of limitations.
 {¶ 7} "[3.] The trial court erred in sustaining the defendant-appellees' motion for summary judgment where there are genuine issues of material fact concerning when the cause of action accrued.
 {¶ 8} "[4.] The trial court erred in sustaining the defendant-appellees' motion for summary judgment because there [are] genuine issues of material fact concerning whether the plaintiff-appellants' claims regarding smoker v. non-smoker premiums are barred by ratification and estoppel where the plaintiffs-appellants' decedent's signature was forged.
 {¶ 9} "[5.] The trial court erred in sustaining the defendant-appellees' motion for summary judgment where there are genuine issues of material fact concerning whether the plaintiff-appellants' claims are barred by a settlement agreement entered into in a 1994 action.
 {¶ 10} "[6.] The trial court erred in sustaining defendant-appellees' motion for summary judgment where there [sic] trial court adopts `verbatim' the moving party's arguments with a statement `all of these arguments are well taken' without citation to any authority and without reference to any case law or statute to support the conclusion.
 {¶ 11} "[7.] The trial court erred in sustaining the defendants-appellants' motion for summary judgment where the trial court failed to consider the plaintiffs-appellants' evidence of genuine issues of material fact.
 {¶ 12} "[8.] The trial court erred in sustaining the defendant-appellees' motion for summary judgment where the trial court allows the defendant insurance company to benefit from the theft by its agent, against public policy."
 {¶ 13} Plaintiff "CBI" is a closely held corporation that is the named beneficiary of a life insurance policy originally purchased in 1985 from defendant Lincoln National Life Insurance Company ("Lincoln") by Carl Brown. The policy was sold to Carl Brown by defendant John Taylor, an insurance agent authorized to sell Lincoln insurance products. The original policy contained a death benefit of $500,000, although an additional $100,000 of coverage was sold by Taylor to Carl Brown in 1987, bringing the total death benefit of the policy to $600,000.
 {¶ 14} On June 23, 1994, Carl Brown passed away. When demand for payment of the policy was made by CBI, Lincoln refused to remit the death benefit on the basis that the policy was no longer in force. Specifically, Lincoln maintains that Carl Brown's policy was terminated and/or lapsed for nonpayment of premiums on April 3, 1994. In their complaint, plaintiffs allege that Lincoln acted wrongfully when it terminated the policy and refused to pay the death benefit after the death of Carl Brown.
 {¶ 15} Moving back in time, prior to the death of Carl Brown, Mrs. Brown individually purchased stock and other financial investments from defendant Taylor in a series of transactions unrelated to Carl Brown's life insurance policy. Unfortunately, in 1993, it was discovered that Taylor had embezzled investment funds from a number of Lincoln's clients, including Mrs. Brown.[2] After Taylor's wrongdong came to light, Lincoln conducted an investigation into the matter. As a result of that investigation, Lincoln claimed that Taylor had misappropriated three of Mrs. Brown's checks amounting to a total of $35,000.
 {¶ 16} However, Mrs. Brown disagreed with Lincoln's findings and maintained that Taylor had stolen an additional $100,000, which she claims to have given to him in a plain brown paper bag. On January 27, 1995, Mrs. Brown filed an action to recover these funds. That action was settled when Lincoln agreed to reimburse a portion of Mrs. Brown's loss. Although the plaintiffs submitted a purported copy of the settlement agreement to the trial court and have also attached a copy of this document to their appellate brief, as the trial court ruled, plaintiffs failed to properly authenticate or incorporate the written settlement document as required by Civ.R. 56(C) and (E). However, the settlement agreement was properly submitted by the defendants in conjunction with their motion for summary judgment. Thus, the written settlement document submitted by the defendants has been properly incorporated into the record and may be considered by the court as Civ.R. 56 evidence.
 {¶ 17} The first paragraph of the settlement agreement states that it was entered into by Dorothy Brown, the Estate of Carl Brown, c/o Dorothy M. Brown, Administrator, Carl Brown, Inc., and Lincoln National Life Insurance Company. In addition to the substantive portions of the settlement agreement, the agreement contains the following release of liability:
 {¶ 18} "* * * Dorothy Brown, for herself, her heirs, executors, relatives, administrators, successors and assigns, does hereby release and forever discharge any and all claims, demands, or causes of action, of whatever type or nature, whether legal or equitable, which I may now have had against Lincoln National Life Insurance Company, Security-Connecticut Life Insurance Company, LNC Equity Sales Corporation and Steinhaus Financial Group and their respective subsidiaries, related and wholly owned, parent companies, and affiliated companies along with all of their respective officers, directors, representatives, agents and assigns (except John Taylor) * * * [.]"
 {¶ 19} The agreement also provides:
 {¶ 20} "In consideration of the mutual promises and agreements contained herein, Carl Brown, Inc., its officers, directors, shareholders, agents, representatives, shareholders [sic], successors and assigns, do hereby release and forever discharge any and all claims, demands, or causes of action, of whatever type or nature, whether legal or equitable, which I may now have had against Lincoln National Life Insurance Company [as well as the other defendants to that action, except for John Taylor] * * *[.]"
 {¶ 21} Using identical language, the Estate of Carl Brown also released any and all claims that it possessed against the defendants in that action. The settlement agreement also contained the following language relating to this action:
 {¶ 22} "The Parties to this agreement each recognize and acknowledge that Dorothy Brown's deceased husband, Carl Brown, had certain life insurance policies with Lincoln National Life Insurance Company. The Parties agree any claims that may arise from said policies or pertaining to said policies are not a part of this Settlement Agreement and are hereby specifically excluded. The Estate of Carl Brown and Carl Brown, Inc., their agents, officers, employees, servants, successors and assigns, reserve to themselves those rights and claims (if any) arising out of or relating to the sale and purchase of insurance or the cancellation of said life insurance policies."
 {¶ 23} Turning back to this action, plaintiffs' re-filed complaint sets forth the following eleven causes of action: (1) fraud against defendants John Taylor and Taylor Financial Services; (2) unjust enrichment against defendant Lincoln for incorrectly billing Carl Brown as a smoker rather than a nonsmoker; (3) an accounting for the excess monies held by Lincoln as a result of the alleged over billing; (4) bad faith and breach of fiduciary duty by Lincoln for failing to supervise Taylor, and for canceling the decedent's life insurance policy without proper notice; (5) breach of contract for charging the insured incorrect premiums, and for Lincoln's refusal to honor the terms of the policy upon Carl Brown Sr.'s death; (6) breach of contract by the Taylor defendants; (7) breach of fiduciary duty and bad faith as a result of Lincoln's conversion of the plaintiffs' funds, and for Lincoln's failure to apply those funds to pay the policy premiums; (8) negligent supervision of the Taylor defendants by defendant Lincoln; (9) negligence on the part of all of the defendants; (10) conversion by the Taylor defendants; and finally (11) specific performance of the insurance contract.
 {¶ 24} On October 5, 2001, defendants moved the trial court for permission to file a motion for summary judgment. Plaintiffs opposed defendants' motion, and countered with a motion for summary judgment of their own. On February 4, 2002, the trial court released a decision, the dispositive portion of which is reproduced below:
 {¶ 25} "Defendants offer several arguments in support of their motion for summary judgment. First, Defendants assert that Plaintiffs' claims are grounded in tort and are therefore barred by the four-year statute of limitations set forth in R.C. § 2305.09. Second, Defendants assert that Plaintiffs' sole claim alleging a cause of action in contract fails to state a claim upon which relief can be granted. Third, Defendants assert that Plaintiffs' claims regarding the smoker vs. non-smoker insurance premiums are barred by estoppel and/or ratification. Fourth, defendants assert that Plaintiffs' estoppel claims are barred by the settlement agreement entered into in the 1994 action.
 {¶ 26} "All of these arguments are well taken. Following a thorough review of the motion memoranda and the applicable law, the Court finds that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law. * * *" (Feb. 4, 2002 Decision and Entry at 5.)
 {¶ 27} A motion for summary judgment allows a court to terminate litigation only when the resolution of factual disputes is unnecessary. As explained by the Ohio Supreme Court in Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, in order to obtain summary judgment, the moving party must show that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion adverse to the nonmoving party. Id. at 105, citing State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn. (1994),69 Ohio St.3d 217, 219. Specifically, Civ.R. 56(C) provides that:
 {¶ 28} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"
 {¶ 29} In order for a motion for summary judgment to be granted, the moving party bears the initial burden of demonstrating that there are no genuine issues of material fact concerning the essential elements of the opponent's case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. In order to carry this burden:
 {¶ 30} "* * * [T]he movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. * * * These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. * * *" Id. at 292-293.
 {¶ 31} Clearly, the burden of demonstrating an entitlement to summary judgment rests with the moving party who must direct the court's attention to properly admissible evidence which demonstrates that the nonmoving party cannot support his or her claim or defense. However, once a moving party presents a meritorious motion for summary judgment, the nonmoving party must come forward with specific facts which demonstrate the existence of genuine issues of fact. In doing so, the nonmoving party may not simply rest upon unsupported claims or allegations whether contained in the party's complaint or briefs. Id.
 {¶ 32} Before proceeding to address the assignments of error set forth by the plaintiffs, we find it necessary to address the issue of standing. It is well-established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue. Ohio Contractors Assn. v. Bicking (1994),71 Ohio St.3d 318, 320. The issue of standing is a threshold test that, once met, permits a court to determine the merits of the questions presented. Tiemann v. Univ. of Cincinnati (1998), 127 Ohio App.3d 312. The standing requirement answers the question of whether a plaintiff can demonstrate an injury sufficiently traceable to the conduct of the defendant. In order to have standing to raise a claim, one must demonstrate an injury in fact. Fraternal Order of Police v. Cleveland (2001), 141 Ohio App.3d 63, 75.
 {¶ 33} As observed by the United States Supreme Court in Los Angeles v. Lyons (1983), 461 U.S. 95, 103 S.Ct. 1660:
 {¶ 34} "Abstract injury is not enough. The plaintiff must show that he `has sustained or is immediately in danger of sustaining some direct injury'* * * and the injury or threat of injury must be both `real and immediate,' not `conjectural' or `hypothetical.' See, e.g., Golden v. Zwickler, 394 U.S. 103, 109-110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113
(1969); United Public Workers v. Mitchell, 330 U.S. 75, 89-91,67 S.Ct. 556, 564-565, 91 L.Ed. 754 (1947); Maryland Casualty Co. v. Pacific Coal Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826
(1941); Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601,67 L.Ed. 1078 (1923)." Id. at 101-102.
 {¶ 35} A party's unsupported assertion that he or she has suffered, or will suffer an injury, is not sufficient to confer standing. Rather, a litigant must demonstrate that he or she has a "personal stake in the outcome of the controversy." Middletown v. Ferguson (1986), 25 Ohio St.3d 71, 75.
 {¶ 36} Having reviewed the record in this case, we conclude that it is bereft of fact or allegation which would indicate that Chad Brown has been personally injured by any act or non-act of any of the defendants named in this case. It is hornbook law that a plaintiff is the "master" of his complaint. See Barnett v. Carquest Auto Parts of Whitehall (Dec. 8, 1998), Franklin App. No. 98AP-372; and Lelan v. Flinn (Nov. 17, 1998), Franklin App. No. 98AP-363. As master of his complaint, plaintiff Chad Brown chose to join with the other plaintiffs in this case and filed suit against the defendants in his individual capacity. Having reviewed the facts as set forth in the record, it is clear that Chad has no personal connection with the insurance policy issued by Lincoln, as he was neither an owner nor purchaser of that policy, nor was he a named third-party beneficiary.[3] Chad also had no contact, nor did he do any business with John Taylor, Lincoln, or any of the other defendants regarding the insurance policy purchased by his father. Finally, Chad had no interest or connection with the fraud committed against his mother by Taylor. Therefore, he has no personal stake in the claims set forth in the plaintiffs' re-filed complaint, and lacks standing to litigate those claims. Therefore, we conclude that Chad Brown must be dismissed from this action.
 {¶ 37} Mrs. Brown joined the re-filed complaint as an individual plaintiff, as well as the Administratrix of the Estate of Carl Brown.[4]
As an individual, Mrs. Brown was not in privity of contract with Lincoln or the other defendants regarding the insurance policy. She did not own the policy, nor was she a named, or third-party beneficiary thereunder. We also find no indication that Mrs. Brown has been directly injured by any conduct, action, or inaction of the defendants in connection with the purchase or cancellation of the life insurance policy purchased by Carl Brown. Therefore, as an individual plaintiff, we find that Mrs. Brown has no personal stake in litigating the claims which are based upon the insurance policy or its cancellation. Moreover, the record reveals that Mrs. Brown released her claims against the defendants as follows: "Dorothy Brown * * * does hereby release and forever discharge any and all claims, demands, or causes of action, of whatever type or nature, whether legal or equitable, which I may now have had against * * *" each of the defendants except defendant Taylor. Therefore, as an individual plaintiff, she too lacks standing to litigate the claims set forth against the defendants.
 {¶ 38} Before proceeding, we must also discuss what is commonly known as the "saving statute." Plaintiffs Chad Brown and CBI filed their original complaint with the Franklin County Court of Common Pleas on June 22, 1998. After more than a year of procedural wrangling, Chad Brown and CBI voluntarily dismissed their complaint on October 15, 1999. They then re-filed their complaint on October 13, 2000. However, when they did so, they were joined in the re-filing by Dorothy Brown and the Estate of Carl Brown.
 {¶ 39} R.C. 2305.19, the "saving statute," provides that:
 {¶ 40} "In an action commenced, or attempted to be commenced, if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff, or, if he dies and the cause of action survives, his representatives may commence a new action within one year after such date. * * *"
 {¶ 41} R.C. 2305.19 will "save" a re-filed action that would otherwise be barred by a statute of limitations when the requirements of the rule have been satisfied, and "when the original suit and the new action are substantially the same." Children's Hospital v. Ohio Dept. of Public Welfare (1982), 69 Ohio St.2d 523, 525. Pursuant to R.C. 2305.19, "actions are not substantially the same, however, when the parties in the original action and those in the new action are different." Id. at 525. The actions are also not substantially the same when the relief sought in the new action is different from the relief sought in the original action. Id. at paragraph one of the syllabus.
 {¶ 42} A new action is "substantially the same," when the new complaint differs not at all, or only to the extent that it adds "new" theories of recovery based upon the same facts stated in the original complaint. If a re-filed complaint does add additional theories of recovery, those theories must be based upon allegations set forth in the original complaint which would give the defendant or defendants fair notice of the claims added to the second action. Lanthorn v. Cincinnati Ins. Co., Adams App. No. 02CA743, 2002-Ohio-6798; Vercellotti v. HVC-Daly, Inc. (Dec. 5, 1997), Lucas App. No. L-97-1063; and Jones v. St. Anthony Med. Ctr. (Feb. 20, 1996), Franklin App. No. 95APE-08-1014.
 {¶ 43} In this case, no matter what date is used as the starting date for the four-year statute of limitations applicable to the plaintiffs' tort-based claims, i.e., the date of Carl Brown's death, as argued by the plaintiffs, or some earlier date, as argued by the defendants, Dorothy Brown and the Estate of Carl Brown have failed to timely file their claims as they were not parties to the original action and, therefore, are not entitled to take advantage of the one-year grace period set forth in R.C. 2305.19.
 {¶ 44} Plaintiffs Chad and Dorothy Brown must be dismissed from this action as Chad Brown lacks standing to litigate any of the causes of action set forth in the complaint, while Dorothy Brown lacks standing to litigate any of the claims arising out of the insurance contract, and also is unable to pursue any of the tort-based claims as she failed to timely file those claims and is not able to take advantage of the savings statute. Finally, the record shows there to be no question of fact that the Estate of Carl Brown also failed to timely file its tort claims. Thus, the only remaining plaintiff who may be able to litigate those claims is CBI.
 {¶ 45} As correctly noted by the defendants, "[a]bsent legislative definition, it is left to the judiciary to determine when a cause `arose' for purposes of statutes of limitations." O'Stricker v. Jim Walter Corp. (1983), 4 Ohio St.3d 84, paragraph one of the syllabus.
 {¶ 46} In their first and third assignments of error, plaintiffs argue the trial court erred when it concluded that their tort-based claims were filed beyond the applicable four-year statute of limitations for fraud set forth in R.C. 2305.09. Having reviewed the plaintiffs' complaint, we find that plaintiffs' first, fourth, seventh, eighth, ninth, and tenth causes of action all sound in tort and are subject, at most, to the four-year statute of limitations set forth in R.C. 2305.09.
 {¶ 47} According to the plaintiffs, the four-year statute of limitations should begin to run from the date of Carl Brown's death. In contrast, defendants maintain that the statute should begin to run, at the latest, when Carl Brown's insurance policy was cancelled. Thus, the plaintiffs argue for a starting date of June 23, 1994, while the defendants argue for a starting date of May 1, 1994.
 {¶ 48} In support of their theory, plaintiffs state that a cause of action accrues when it comes into existence as an enforceable claim. In this case, plaintiffs assert that their claims did not become enforceable until the date of Carl Brown's death. However, notably absent from their assertion is any cogent argument, analysis, evidence, or law which would support this conclusion. Indeed, following the plaintiffs' logic, plaintiffs could be defrauded on any date in the past, but instead of having four years from the date of the fraud in which to file their claims, plaintiffs maintain that they have four years after the death of Carl Brown in which to file their claims. In theory, this could allow for almost any time period to expire between the fraudulent or tortious act and the filing of the action. The legislature certainly could not have intended such a result in creating rigid time periods within which plaintiffs are required to file their tort-based claims.
 {¶ 49} It is left to the court to determine when a cause of action arose for purposes of calculating whether or not a claim was filed within the time period set forth by the applicable statute of limitations. O'Stricker, supra. In this case, we conclude that the statute of limitations on the plaintiffs' tort-based claims began to run at the latest when the insurance policy was cancelled, as all of the plaintiffs' claims are based upon acts which occurred on or before the cancellation of Carl Brown's insurance policy.
 {¶ 50} Plaintiffs acknowledge that Carl Brown's insurance policy was cancelled no later than May 1, 1994, while Carl Brown was still alive. There is evidence that Carl Brown was notified by Lincoln of Lincoln's intent to cancel the policy for nonpayment of premiums before this date. Additionally, the fraud perpetrated by Taylor was discovered in 1993, and he pled guilty to aggravated theft in February 1994. However, plaintiffs filed their original complaint against the defendants on June 22, 1998, more than four years after the occurrence of the alleged tortious activity which they now challenge.
 {¶ 51} "[A] cause of action may be said to accrue when there coexists (1) a demand capable of present enforcement; (2) a suable party against whom it may be then enforced; and (3) a party in being who has a present right to enforce it." Tobias v. Richardson (1904), 16 Ohio C.D. 81, affirmed (1905), 72 Ohio St. 626. In this case, construing the evidence in the plaintiffs' favor, all of these factors were present no later than May 1, 1994. At that time, the plaintiffs, including Carl Brown, who was still alive at that time, could have sued asserting the very tort-based causes of action contained in the plaintiffs' re-filed complaint. As such, we find that summary judgment was appropriate against CBI, as well as the other plaintiffs, as they failed to timely file their tort-based claims. Therefore, plaintiffs' first and third assignments of error are overruled.
 {¶ 52} In their second assignment of error, plaintiffs contend that the trial court erred when it dismissed a number of claims which the plaintiffs contend are contractual in nature and subject to the 15-year statute of limitations contained in R.C. 2305.06.[5] Arguing in support of summary judgment, defendants maintain that all of the plaintiffs' claims are tortious in nature, and that the plaintiffs have failed to set forth any claims based upon breach of contract. Construing the evidence in favor of the plaintiffs, this argument is clearly wrong.
 {¶ 53} For example, in their fifth cause of action, plaintiffs set forth a cause of action for breach of contract based upon the plaintiffs' uncontested allegations that Carl Brown was incorrectly billed as a smoker rather than a nonsmoker. The record also reveals a question of fact as to whether Lincoln wrongfully refused to credit money toward the policy premiums with money given for that purpose to its agent, Taylor. There is also a question of fact as to whether the defendants failed to pay the premiums with the excess funds held by Lincoln as a result of the alleged over-billing. We also find there to be a viable issue of fact regarding whether Lincoln wrongfully breached a continuation of insurance and grace-period provision in the life insurance contract. Finally, we find that the plaintiffs also present a prima facie claim of breach of contract in their sixth assignment of error against defendant Taylor.
 {¶ 54} Moreover, we are unable to conclude that no issue of fact exists regarding the plaintiffs' claim that Lincoln wrongfully cancelled the life insurance policy while at the same time it was in possession of money which rightfully belonged to the plaintiffs. Specifically, we find there to be a factual dispute regarding whether Lincoln: (1) was in possession of funds which were taken by its agent Taylor with instructions to pay the policy premiums, yet were not applied to pay the premiums as they became due; (2) was in possession of funds which were incorrectly over-billed; and (3) was in possession of funds which were stolen by its agent, all allegedly at the same time that Lincoln cancelled the policy for the "nonpayment" of premiums. Accordingly, summary judgment against plaintiffs CBI and the Estate of Carl Brown on plaintiffs' breach of contract claims was inappropriate. Therefore, plaintiffs' second assignment of error is sustained.
 {¶ 55} In their fourth assignment of error, plaintiffs claim the trial court incorrectly determined that their claim alleging Carl Brown was incorrectly billed as a smoker is barred by ratification and/or estoppel. Specifically, plaintiffs argue that Carl Brown was not a smoker, that the main policy premiums were nonsmoker premiums, and that the signature on the $100,000 rider that was added to the $500,000 base policy was forged by defendant Taylor. As a result of this forgery, plaintiffs maintain that Carl Brown overpaid more than $13,800 in premiums which the defendants improperly retained. Plaintiffs also contend that Lincoln was aware that Taylor had previously signed client documents, and that they are in possession of an internal memo in which Lincoln stated that any document submitted by Taylor was to be reviewed by a supervisor.
 {¶ 56} In response, the defendants argue that this claim is subject to the four-year statute of limitations set forth in R.C. 2305.09. Specifically, defendants argue that if Carl Brown never agreed to be charged Lincoln's standard smoker rates, and that if the document implementing those rates was forged by Taylor, then the defendants acted fraudulently and, consequently, plaintiffs' cause of action sounds in tort. Further, defendants maintain that, given the circumstances, Carl Brown was, or should have been, on notice of this fraudulent activity when his quarterly premiums increased by a substantial amount. Conversely, defendants maintain that if the term rider policy is authentic and was signed by Carl Brown, then no contract was breached, and at most a unilateral or mutual mistake occurred. Finally, since Carl Brown continued to pay and made no objection or inquiry regarding the rider, defendants argue that the plaintiffs' claim is barred by the doctrines of ratification and estoppel.
 {¶ 57} We have carefully reviewed the record in this case, including plaintiffs' complaint, and the briefing and evidence associated with the defendants' motion for summary judgment. Having done so, it is clear that plaintiffs have presented this cause of action as one for fraud. In their re-filed complaint at paragraph 99, plaintiffs state:
 {¶ 58} "Defendants Taylor, Taylor Financial, JDIA and/or John Doe, while acting as agent for Defendants Lincoln and JDIC, negligently, carelessly, recklessly, willfully or maliciously rated Carl L. Brown, Sr. as a `smoker' rather than a `nonsmoker' thereby increasing the insurance premiums and Defendant Taylor's commission and profit."
 {¶ 59} In addition, in their appellate brief, plaintiffs argue for reversal in their fourth assignment of error as follows:
 {¶ 60} "The Plaintiffs-Appellants have submitted evidence in support of their claims that Defendant Lincoln National's agent John Taylor fraudulently charged the decedent in excess of $13,800.00 for `smoker' premiums after Defendant Lincoln National entered an agreement that the decedent would pay `nonsmoker' premiums. * * *" (Plaintiffs' brief at 11.)
 {¶ 61} Because this cause of action is one based upon the fraud of Lincoln and Taylor, it is subject to the four-year statute of limitations set forth in R.C. 2305.09(C). According to the evidence before the court, the rider to the main policy was sold by Taylor to Carl Brown on November 1, 1987. Thus, if Carl Brown was misled and the defendants committed fraud in incorrectly billing him, this fraud was discoverable in November 1987, when the decedent reviewed, accepted, and signed the terms of the $100,000 policy rider. If this is the case, there is no genuine issue of material fact that the plaintiffs failed to timely file their claim, as they filed their original action over ten years later on June 22, 1998.
 {¶ 62} As the Ohio Supreme Court explained in Investors REIT One v. Jacobs (1989), 46 Ohio St.3d 176, a cause of action for misrepresentation or fraud must be brought within four years after the misrepresentation was or should have been discovered. The "discovery rule" generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained-of injury. Oliver v. Kaiser Community Health Found. (1983), 5 Ohio St.3d 111. As the court stated in Craggett v. Adell Ins. Agency (1993), 92 Ohio App.3d 443, 454, no more than a reasonable opportunity to discover the misrepresentation is required to start the running of a statute of limitations. Moreover, constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. Flowers v. Walker (1992), 63 Ohio St.3d 546. A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. Id. Rather, the "cognizable event" itself puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue his or her remedies.
 {¶ 63} Construing the evidence in a light most favorable to the plaintiffs, we are unable to find that the plaintiffs submitted any evidence which we can properly consider under Civ.R. 56(C) that supports Chad Brown's accusation that the signature of Carl Brown on the $100,000 rider was forged. Moreover, the signed rider went into effect on November 1, 1987, and the next quarterly bill reflected a substantial increase in Carl Brown's insurance premium. Specifically, Carl Brown's quarterly premium increased from $4,362 to $6,543, a quarterly increase of $2,181 and a yearly increase of $8,724. We find that the signed rider and the amount of this increase was sufficient to put Carl Brown on notice if indeed he was being billed improperly. However, given that the rider went into effect on November 1, 1987, the next quarterly bill reflecting the increased premium would have been sent sometime in the first three months of 1988. Because plaintiffs did not file their original claim until June 1998, we conclude that their claim was untimely filed. Accordingly, the plaintiffs' fourth assignment of error is overruled.
 {¶ 64} In their fifth assignment of error, plaintiffs argue that the trial court erred in sustaining the defendants' motion for summary judgment on the basis that the plaintiffs' claims are barred by the settlement agreement entered into as a result of Mrs. Brown's suit to recover the investment funds she transferred to defendant Taylor. We agree. In the settlement agreement, the plaintiffs clearly and explicitly exclude the claims brought in this action. However, the plaintiffs have failed to demonstrate any prejudice under the facts of this case, and we are unable to find that the plaintiffs will suffer any prejudice given our disposition of the plaintiffs' assignments of error. As there has been no prejudice demonstrated, plaintiffs' fifth assignment of error is overruled.
 {¶ 65} In their sixth assignment of error, plaintiffs contend that the trial court erred when it adopted "verbatim" the defendants' arguments in support of their motion for summary judgment. While we agree that the trial court's written analysis of the law and of the evidence was sparse, that does not necessarily mean that the court did not consider all of the issues in this case. Indeed, the court did issue a five-page opinion ruling upon the parties' motions. Moreover, the plaintiffs have raised this issue for the first time on appeal. Under the circumstances, we are unwilling to reverse the entirety of the trial court's decision on this basis. Therefore, plaintiffs' sixth assignment of error is overruled.
 {¶ 66} In their seventh, and unopposed assignment of error, plaintiffs argue that the trial court incorrectly failed to consider the affidavit of Chad Brown submitted in opposition to the defendants' motion for summary judgment. We have reviewed the trial court's decision, as well as the plaintiffs' appellate briefs, and are unable to find any statement by the trial court, or any evidence submitted by the plaintiffs, that the trial court did not consider Chad Brown's affidavit. In reviewing this assignment of error, we find it to be without merit.
 {¶ 67} In their eighth assignment of error, plaintiffs maintain that the trial court erred in granting the defendants summary judgment because it allowed the defendants to benefit from their negligent hiring of John Taylor, i.e., the retention of funds the defendants were not entitled to, which would be against public policy.
 {¶ 68} The burden of affirmatively demonstrating error on appeal rests with the party asserting error. App.R. 9 and 16(A)(7); and State ex rel. Fulton v. Halliday (1944), 142 Ohio St. 548. Pursuant to App.R. 16(A)(7), an appellant must present his or her contentions with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record upon which he or she relies. It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. Slyder v. Slyder (Dec. 29, 1993), Summit App. No. 16224; Sykes Constr. Co. v. Martell (Jan. 8, 1992), Summit App. No. 15034. It is also not appropriate for this court to construct the legal arguments in support of an appellant's appeal. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), Summit App. No. 18349.
 {¶ 69} Having reviewed the plaintiffs' seventh and eighth assignments of error, we find both to be unsupported and unmeritorious. Indeed, once the defendants became aware of Taylor's wrongdoing, they conducted an investigation which resulted in refunds to the defendants' clients of the money stolen by Taylor. Taylor also pled guilty to criminal charges as a result of his actions. Therefore, we cannot think of any scenario in which the defendants are profiteering from the hiring of Taylor against public policy, not to mention that the plaintiffs failed to present any evidence or argument that the defendants negligently hired Taylor. Accordingly, plaintiffs' seventh and eighth assignments of error are also overruled.
 {¶ 70} Summary judgment is a procedural device designed to terminate litigation where there is no factual issue to resolve. It must be awarded with caution, only after resolving all doubts and construing all evidence against the moving party, and then only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. Norris v. Ohio Standard Oil Co. (1982), 70 Ohio St.2d 1.
 {¶ 71} After completing a thorough review of the record, and for the foregoing reasons, we find there to be certain issues of fact which preclude summary judgment upon all of the plaintiffs' claims.
 {¶ 72} For the foregoing reasons, plaintiffs' second assignment of error is sustained, and plaintiffs' remaining seven assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part and reversed in part, and cause remanded.
BRYANT and TYACK, JJ., concur.
[1] The plaintiffs have not appealed the trial court's denial of their motion for summary judgment.
[2] Taylor ultimately pled guilty in February 1994 to aggravated theft.
[3] In order to establish one's status as a third-party beneficiary, that individual must demonstrate that the contract in question was directly and primarily for the benefit of the claimant. See Emmitt v. Brophy (1884), 42 Ohio St. 82, 88-89, and Hines v. Amole (1982),4 Ohio App.3d 263, 268. An incidental benefit is insufficient to give a third person a right of action. Id. at 268; Chitlik v. Allstate Ins. Co. (1973), 34 Ohio App.2d 193, 196.
[4] Mrs. Dorothy Brown and the Estate of Carl Brown were not parties to the first complaint filed on June 22, 1998.
[5] R.C. 2305.06 provides: "Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued."